(54 App. Div. 532.)

## MAGAR v. HAMMOND et al.

(Supreme Court, Appellate Division, Second Department.   November 23, 1900.)

1. NEGLIGENCE—PRIVATE FISH POND—TRESPASSER—INJURY—LIABILITY.

   Fisheries Law, § 215, provides that any person who shall disturb or interfere in any way with the fish in a private pond, without the consent of the owner, shall be deemed guilty of a misdemeanor.   Defendant H. owned a fish pond, and had put up signs against trespassing, as required by statute, and hired defendant T. to watch the premises; and T., with knowledge of H., was in the habit of firing a gun at night to frighten away trespassers, and plaintiff, who had been fishing in the pond at night, was shot by the promiscuous shooting of the watchman.   *Held*, in an action for the injury, that defendants' motion for a nonsuit on the ground that plaintiff was a criminal trespasser, and could recover only for willful acts of defendants, was properly denied, since a party has no right to negligently injure a trespasser.

2. SAME—SHOOTING BY WATCHMAN—SCOPE OF EMPLOYMENT.

   Defendants' motion for a nonsuit on the ground that the shooting was not within the scope of T.'s employment was properly denied.

3. SAME—RECKLESS INFLICTION OF INJURY—INSTRUCTIONS.

   Where plaintiff, who had been fishing after night in the private pond of one of the defendants, was shot, as he was starting away, by the watchman, who was in the habit of firing a gun after nightfall to frighten away trespassers, an instruction that if the watchman knew, or by the exercise of ordinary care could have ascertained, that human beings were liable to be injured by the shot, or if he wantonly and recklessly fired in the direction of human beings, defendants were liable, was proper.

4. SAME—CRIMINAL TRESPASSER—DUTY NOT TO INJURE—DEGREE OF CARE.

   Where plaintiff was guilty of a misdemeanor in fishing in a private pond, and was injured by being shot by the watchman while so engaged, an instruction that defendant owed no duty to plaintiff, except that of refraining from intentionally doing him any unnecessary injury, because he was engaged in a criminal act, was properly modified by adding, "or from doing him an injury through wanton and reckless negligence."

5. SAME—CONTRIBUTORY NEGLIGENCE.

   Where plaintiff was injured by being shot by the watchman while engaged in fishing in the private pond of defendant, the fact that he was a trespasser, and guilty of a misdemeanor, did not make the act of fishing in the pond contributory negligence, since it was not an act which persons of ordinary prudence and moral sense would feel to be careless or morally wrong, or as involving a reasonable possibility of injury.

Appeal from trial term, Orange county.

Action by Frank L. Magar against Stoddard Hammond and another.   From a judgment in favor of plaintiff, and from an order denying a new trial, defendants appeal.   Affirmed.

Argued before GOODRICH, P. J., and BARTLETT, WOODWARD, HIRSCHBERG, and JENKS, JJ.

Henry Bacon, for appellants.
Thomas Watts, for respondent.

GOODRICH, P. J.   The plaintiff, while engaged in poaching upon the game and fishery preserves of the defendant Hammond, was shot by the defendant Tompkins, who was employed by Hammond to protect the premises.   The plaintiff had a verdict of $15,000,

and from the judgment entered thereon, and the order denying a motion for a new trial, the defendants appeal.

There was evidence tending to show the following facts: Hammond was owner of about 300 acres of wilderness in Sullivan county, where he had made a clearing and built a residence. There was no other house within three miles, and there were no roads on the property, except an old and abandoned one, and the private road of the owner to Emmonsville. In 1894 he built a dam in the center of the tract, and created a lake of about 60 acres, which he stocked with trout, and erected a fish hatchery, with the necessary appurtenances for hatching trout spawn. In accordance with article 9 of the fisheries, game, and forest law (1 Rev. St. [9th Ed.] p. 871), he posted and published notices warning all persons against trespassing. Tompkins was employed by him as a watchman, and was accustomed to patrol the lake in a boat, often having with him a rifle loaded with ball cartridges, furnished by Hammond. · On several occasions he had discharged the gun at night, either to kill depredating animals or to frighten away trespassers. Hammond knew these facts. The plaintiff was aware of the notices, and of the purpose to which the property was devoted. On June 9, 1899, the plaintiff, with some companions, about half-past 7 o'clock in the evening, went to the lake to fish for trout from the shore, and had caught several, which were found in his pocket after the accident. He had been there before for the same purpose. It is conceded that he was knowingly a trespasser on the premises. After fishing about an hour and a half, he and his companions saw the boat which Tompkins was paddling about the lake. Magar went back from the shore and sat down, and, after the boat had passed out of sight, apparently resumed fishing. About 10 o'clock the men ceased fishing and started to go home. They were about 100 feet from the shore, and from 25 to 50 feet on the rising ground above the water, when a shot was fired from the boat, and in a minute a second shot; the bullets coming in the vicinity of the men, who lay behind some logs or rocks for protection. Magar, being alarmed by the whistling of the bullets in close proximity to him, after these two shots, called out to "hold on." One or two more shots were fired, and the plaintiff was hit by a ball in the hip, and received very serious injuries. The defendant Tompkins testified that he heard a noise on the shore, and called out, asking if anybody was there, and, if so, to speak, and received no answer, whereupon he fired the several shots; that he did not aim at any particular spot, and did not know that anybody was about the lake.

The action was tried on the theory that the act of Tompkins was one of negligence. The court said at the close of the evidence:

"As I understand, the complaint charges negligence. Is that correct? Mr. Maybee (plaintiff's counsel): That is correct. The Court: There is no charge of malicious and willful wrongdoing on the part of Tompkins in the complaint. Mr. Bacon (defendants' counsel): That is true, sir, but there was in the opening. The Court: I think Mr. Anderson said that, but afterwards corrected himself. Mr. Bacon: Then there will be no question of willful act submitted to the jury? The Court: No. The liability of the master for the negligent act of the servant."

The fisheries law (section 215) provides as follows:

"Upon compliance with the foregoing provisions for preventing trespassing or for devoting lands to propagation of fish, birds and game, no person shall disturb or interfere in any way with the fish or wild birds or wild animals while on the premises so protected, except with the consent of the owner or person having the exclusive right to shoot, hunt or fish thereon. Whoever shall violate or attempt to violate the provisions of this section shall be deemed guilty of misdemeanor, and shall, in addition thereto, be subject to exemplary damages in an amount not less than fifteen dollars, nor more than twenty-five dollars, in addition to the actual damages sustained by the owner or lessee."

The evidence was sufficient to show that the plaintiff at the time of his injury was guilty of acts constituting a misdemeanor, and this relates not only to the time while he was actually fishing but to the time when he was leaving the premises with the fish upon his person. The first question which meets us is, what, if any, duty did Hammond owe to the plaintiff? If he owed him no duty, negligence cannot be predicated. The duty must be a legal one, in order that a breach of it constitute negligence. Shear. & R. Neg. § 810. As was said in Nicholson v. Railway Co., 41 N. Y. 525, 529, "negligence consists in the commission of some lawful act in a careless manner, or in the omission to perform some legal duty, to the injury of another." In that case one Nicholson, while crossing the defendant's track, was injured by a runaway train set in motion by a high wind. The court held that he had no legal right to be on the track, being at the utmost an implied licensee, and that such a license created no legal right, and imposed no duty upon the defendant, except the general duty which every man owes to others to do them no intentional wrong or injury.

In Railroad Co. v. Munger, 5 Denio, 255, 266, 267, it was said:

"Where that which is done by a party on his own land is illegal, and punishable as such, or, although not illegal, if it be an act which probably may endanger human life, as the setting of spring guns, he may be responsible, even to a voluntary trespasser, for injuries thus sustained. * * * Negligence is a violation of the obligation which enjoins care and caution in what we do. But this duty is relative, and, where it has no existence between particular parties, there can be no such thing as negligence, in the legal sense of the term. * * * But injuries inflicted by design are not thus to be excused. A wrongdoer is not necessarily an outlaw, but may justly complain of wanton and malicious mischief. Negligence, however, even when gross, is but an omission of duty. It is not designed and intentional mischief, although it may be cogent evidence of such an act. Of the latter, a trespasser may complain, although he cannot be allowed to do so in regard to the former."

It was said in Vandenburgh v. Truax, 4 Denio, 464, 465:

"It may be laid down as a general rule that when one does an illegal or mischievous act which is likely to prove injurious to others, and when he does a legal act in such a careless and improper manner that injury to third persons may probably ensue, he is answerable, in some form of action, for all the consequences which may directly and naturally result from his conduct. * * * It is not necessary that he should intend to do the particular injury which follows, nor, indeed, any injury at all."

In Boyle v. Railroad Co., 39 Hun, 171, affirmed in 115 N. Y. 636, 21 N. E. 724, Judge Barker said (page 173):

"But injuries inflicted by design are never excused, for the law is not so unjust and cruel as to regard a trespasser upon lands of another as an out-

67 N.Y.S.—5

law; and so the wrongdoer may justly complain if an injury has been done to his person or his property intentionally and maliciously."

The court held the doctrine to be that the defendant was not liable for anything short of a reckless and wanton misconduct, citing Maynard v. Railroad Co., 115 Mass. 458.

In Rounds v. Railroad Co., 64 N. Y. 129, the plaintiff, a boy, was stealing a ride on the platform of a baggage car in a train of the defendant. The baggageman ordered him off; and the plaintiff replied: "I can't. The wood is right here. I want you to help me," —whereupon the brakeman kicked him off, and he fell under the wheel, which passed over him and crushed his leg. Judge Andrews, delivering the opinion, said that in Higgins v. Railroad Co., 46 N. Y. 23, in which, also, he delivered the opinion, the rule was stated to be—

"That the master was responsible civiliter for the wrongful act of the servant causing injury to a third person, whether the act was one of negligence or positive misfeasance, provided the servant was at the time acting for the master, and within the scope of the business intrusted to him. The master is liable only for the authorized acts of the servant, and the root of his liability for the servant's acts is his consent, express or implied, thereto. When the master is to be considered as having authorized the wrongful act of the servant, so as to make him liable for his misconduct, is the point of difficulty. Where authority is conferred to act for another, without special limitation, it carries with it, by implication, authority to do all things necessary to its execution; and when it involves the exercise of the discretion of the servant, or the use of force towards or against another, the use of such discretion or force is a part of the thing authorized, and, when exercised, becomes, as to third persons, the discretion and act of the master, and this although the servant departed from the private instructions of the master, provided he was engaged at the time in doing his master's business, and was acting within the general scope of his employment. It is not the test of the master's liability for the wrongful act of the servant, from which injury to a third person has resulted, that he expressly authorized the particular act and conduct which occasioned it. In most cases where the master has been held liable for the negligent or tortious act of the servant, the servant acted not only without express authority to do the wrong, but in violation of his duty to the master. It is, in general, sufficient to make the master responsible that he gave to the servant an authority or made it his duty to act in respect to the business in which he was engaged when the wrong was committed, and that the act complained of was done in the course of his employment. The master in that case will be deemed to have consented to and authorized the act of the servant, and he will not be excused from liability, although the servant abused his authority, or was reckless in the performance of his duty, or inflicted an unnecessary injury in executing his master's orders. The master who puts the servant in a place of trust or responsibility, or commits to him the management of his business or the care of his property, is justly held responsible when the servant, through lack of judgment or discretion, or from infirmity of temper, or under the influence of passion aroused by the circumstances and the occasion, goes beyond the strict line of his duty or authority, and inflicts an unjustifiable injury upon another."

In Shear. & R. Neg. § 686, it is said:

"A very high degree of care is required from all persons using firearms in the immediate vicinity of other people, no matter how lawful, or even necessary, such use may be."

Again, in Mott v. Ice Co., 73 N. Y. 543, 547, the court said:

"For the acts of the servant, within the general scope of his employment, while engaged in his master's business, and done with a view to the further-

ance of that business and the master's interest, the master will be responsible, whether the act be done negligently, wantonly, or even willfully. In general terms, if the servant misconducts himself in the course of his employment, his acts are the acts of his master, who must answer for them."

The court also questioned and distinguished Isaacs v. Railroad Co., 47 N. Y. 122, which the appellant cites in favor of his contention.

We had occasion in Levy v. Ely, 48 App. Div. 554, 62 N. Y. Supp. 855, to examine the question herein involved, and held (Mr. Justice Woodward writing) that the rule as laid down in the Mott Case was the recognized law of this state.

The defendants moved for a nonsuit at the close of the plaintiff's evidence, and also at the close of the whole evidence. The motion was based on the ground that the plaintiff was a criminal trespasser, and could only recover for the willful acts of the defendants, or one of them; that, if the shooting was willful, the plaintiff could not recover; that, if the act of Tompkins was grossly negligent, it was a willful act; that there was no evidence that the act of Tompkins was authorized by Hammond or done in pursuance of Tompkins' employment; and that the act, if willful, was contrary to the instructions of Hammond, and consequently the plaintiff could not recover. The court denied the motion, and the defendants excepted. The motion to nonsuit was properly denied. In Clark v. Railroad Co., 40 Hun, 605, 607, Mr. Justice Bradley effectively stated the reason and the proper rule when he said:

"The plaintiff unlawfully jumped upon the moving train of the defendant, and was a trespasser. The defendant owed him no duty, and had the right to remove him from the car, but in so doing was not justified in subjecting him to any unnecessary hazard. The evidence permitted the conclusion that the removal of the plaintiff from the platform or steps of the caboose was caused by the act of an employé of the defendant on the car, in suddenly throwing water into his face, and that it was done to remove him from the car. That being the purpose, the act was within the scope of the authority and employment of the servant of the defendant, and the latter is responsible for the consequences of his act, if it was performed in an illegal and improper manner, and in such manner as to jeopardize unnecessarily the personal safety of the plaintiff, and to cause the injury complained of. Upon this question, and that the plaintiff was free from contributory negligence, the evidence was sufficient to go to the jury, and therefore the defendant's exception to the denial of the motion for a nonsuit was not well taken."

The court charged:

"Did this man Tompkins, when he fired in the night and into the woods as he did, have reason to believe that there were human beings there, or did he in fact know they were there? Did he know, when he fired into the woods as he did, that human beings were where he fired, or by the exercise of ordinary care could he have ascertained, from what has been described here as having happened, that human beings were there, and, knowing they were there, or having the ability to find out by the exercise of ordinary care, did he, notwithstanding that, wantonly, recklessly fire in the direction where these human beings were? That is the vital question in this case. Because, as I have stated, this defendant had a right to have a watchman. The watchman had a right to have a gun. He had a right to have a rifle loaded with a bullet. He had a right to fire his gun in the night anywhere and as often as he pleased on his own land. But did Tompkins, when he fired on that occasion, know he was firing where there were human beings, or in the immediate proximity of where there were human beings,

and, knowing that, or being able to find it out by the exercise of ordinary care, did he still, recklessly and wantonly, discharge his bullet in the direction where these human beings were?"

The defendant's counsel excepted to this portion of the charge, and asked the court to charge that the plaintiff was on Hammond's land for the purpose of fishing in the pond, and was guilty of a crime. The court so charged. The counsel also asked the court to charge that, the plaintiff being there while engaged in a criminal act, the defendant owed him no duty, except that of refraining from intentionally doing him an unnecessary injury, to which the court added: "Or from doing him an injury through wanton and reckless negligence. So amended, I charge." And to this the counsel excepted. These requests and others, propounded in varying language, and the rulings, raised the real point of the defendants' contention; and, under the authorities cited, there was no error in the rulings. There is no question that neither the owner of land nor his servant has the right to inflict malicious injury upon a trespasser, or to use unnecessary force to eject him from the land; but the evidence in this case does not justify the defendants' contention that, as matter of law, the act of Tompkins was outside the master's business, or against his instructions. This was a question of fact, upon the evidence, and it was clearly and explicitly submitted to the jury.

The defendants also contend that the plaintiff was guilty of contributory negligence. I do not think, however, that any such question arises in the case. The principle seems to be "that the plaintiff's trespass, in order to defeat his recovery, must be such as to imply real negligence, from a common-sense point of view, and not in the technical sense, which would include every neglect to comply with the letter of the law. Unless the plaintiff has done something which persons of ordinary prudence and moral sense would feel to be careless or morally wrong, involving a reasonable possibility of injury either to himself or to the person upon whose premises he is trespassing, he should not be debarred from his right of action for negligence." Shear. & R. Neg. § 97. In other words, the trespass of the plaintiff was simply an act contributory to the accident. It was not that negligence contributory to the accident which always defeats a recovery. We think that there was no error in the rulings of the court. The judgment should be affirmed.

Judgment and order affirmed, with costs. All concur.