(59 App. Div. 39.)

MILLS v. BUNKE et al.

(Supreme Court, Appellate Division, Second Department. March 8, 1901.)

NEGLIGENCE—PERSONAL INJURIES—CHILD—PLAYGROUND—VACANT LOT—LOOSE HORSE.

Defendants negligently or intentionally allowed a horse to escape from their stables, and run at large through the street. There were several vacant lots in the vicinity, in one of which plaintiff's intestate, a boy about 6½ years old, was playing with several other children. The horse left the street, and ran across this lot, running over plaintiff's intestate, killing him. The horse was spirited, but not vicious. Neither defendants nor plaintiff's intestate had any right to be on the lot in question, though it was commonly used by the children of the neighborhood as a playground. *Held* sufficient evidence to entitle plaintiff to have the question of whether or not the defendants were negligent submitted to the jury.

Appeal from trial term, Westchester county.

Action by Theodore Mills, as administrator of Walter S. Mills, deceased, against Ratje Bunke and others. From a judgment dismissing plaintiff's complaint, plaintiff appeals. Reversed.

Argued before GOODRICH, P. J., and WOODWARD, HIRSCHBERG, JENKS, and SEWELL, JJ.

George W. Alger, for appellant.
Edward F. Dwight, for respondents.

WOODWARD, J. The plaintiff brings this action as the administrator of the goods, etc., which were of Walter S. Mills, deceased, demanding judgment against the defendants for "carelessly, negli-

gently, and wrongfully" causing the death of his intestate. The learned court at trial term dismissed the complaint, on motion, at the close of plaintiff's evidence, and from the judgment entered appeal comes to this court.

The rule is well established that, in reviewing a judgment for defendant entered upon a nonsuit, plaintiff is entitled to the benefit of every fact that the jury could have found from the evidence given, and to every legitimate inference warranted by the proofs, and we are to examine the matter under this favorable rule for the plaintiff. The defendants, as co-partners, operate a coal yard in New York City, having a building on the north side of 136th street, between Fifth and Lenox avenues, in the rear of which they keep their horses. Late in the afternoon of the 26th day of July, 1896, two horses belonging to the defendants were either turned loose or escaped from defendants' stables, getting into this rear yard, from which one of them, a gray horse, passed out into the highway, and from thence to an open lot adjoining defendants' coal yard on the west, where some two dozen or more children were at play, and one of these, plaintiff's intestate, was run over and killed. The horse appears from the evidence to have been in high spirits, and was running from the time of leaving the defendants' inclosure until the accident, a space of a few seconds. The elaborate research and great learning which have been brought to bear in support of the judgment, and the very able argument of plaintiff's counsel, present the question whether the defendants' servants and employés were negligent in permitting this horse to be at large and beyond their control, under the circumstances. The plaintiff's intestate was a child in good health, $6\frac{1}{2}$ years of age. He was at play with other children in an open lot, such as are common in the vicinity of this accident; and the jury might properly have found that there was an absence of contributory negligence either on the part of plaintiff's intestate or of his parents. Indeed, to have found otherwise, under the evidence as it appeared at the time of granting the nonsuit, would have been to have wholly disregarded the testimony. There was evidence in the case from which the jury might have concluded that these horses were deliberately turned loose and driven out into the street, and, while the defendants practically concede that they would have been liable if the accident had occurred in the highway under such circumstances, they urge that the rule is different because the horse entered upon private premises, which did not belong either to plaintiff's intestate or to his parents, and there worked the wrong for which the plaintiff seeks to recover. We are of the opinion, however, that this position is not tenable. If the defendants, through the negligence of their servants, put in motion a cause which might reasonably be anticipated to result in injury to another, the question of whether that injury was consummated in the public highway, in violation of an ordinance, or upon private premises where the plaintiff's intestate may have been a technical trespasser, is of no consequence. The rule of the common law is that it is the duty of all persons to use reasonable care and skill in dealing with any chattel, and if one is negligent in the perform-

ance of this duty, and mischief or loss ensues to the person or property of another, he will be answerable to that other in damages. Walp. Rub. 224. In the oft-cited case of Vandenburgh v. Truax, 4 Denio, 464, 465, the court say:

"It may be laid down as a general rule that when one does an illegal or mischievous act, which is likely to prove injurious to others, and when he does a legal act in such a careless and improper manner that injury to third persons may probably ensue, he is answerable, in some form of action, for all the consequences which may directly and naturally result from his conduct. * * * It is not necessary that he should intend to do the particular injury which follows, nor, indeed, any injury at all." Magar v. Hammond, 54 App. Div. 532, 536, 67 N. Y. Supp. 63.

This was the doctrine applied in the case of Dickson v. McCoy, 39 N. Y. 400, where the plaintiff, a child of 10 years, was passing the stable of the defendant, upon the sidewalk of a populous street in the city of Troy, when the defendant's horse came out of the stable, going loose and unattended, and, in passing, kicked the plaintiff in the face. The complaint alleged that the horse was of a malicious and mischievous disposition, and accustomed to attack and injure mankind, but the proof failed to sustain this allegation. The court held, however, that this was not material; that "it is not necessary that a horse should be vicious to make the owner responsible for injury done by him through the owner's negligence. The vice of the animal is an essential fact only when, but for it, the conduct of the owner would be free from fault;" as, for instance, in the case of a horse properly fastened in the highway, which should kick or bite a passer-by. In such a case, the owner would be liable only if he had knowledge of the vicious disposition of the animal; but where a horse is allowed to run in the streets of a populous city it is obviously dangerous to the public, and the danger is none the less because the running and kicking of the horse are done in a playful mood than if prompted by a vicious disposition. Dickson v. McCoy, 39 N. Y. 402.

The duty which the defendants owed to the plaintiff's intestate was to use reasonable care in the management and control of the horse which worked this wrong, (and while we have been afforded a very thorough discussion of wild and domestic animals, and the degree of care and responsibility imposed upon their owners,) we are of opinion that the owner of a domestic animal is bound to take notice of the general propensities of the class to which he belongs, and, if such propensities are of a nature to cause injury, he must anticipate and guard against them (Hammond v. Melton, 42 Ill. App. 187); and if the animal be given an opportunity to exercise the propensity, through the negligence of the owner, he will be liable to persons injured without fault on their part (Thomas, Neg. 508, citing Whart. Neg. § 907). It cannot matter, there being no intervening cause, that this accident did not occur upon the highway. The wrong of the defendants, if there was a wrong, consisted in letting their horses loose under the circumstances by which they were surrounded, and where it was reasonable to anticipate that injury would result. The plaintiff's intestate, in so far as the evidence discloses, had as much right upon the vacant lot as the defendants; and even if the

lot belonged to them, and plaintiff's intestate was a trespasser, they had no right to expose him to the danger of being run down and killed by this horse, if, in the exercise of reasonable care, the danger could have been foreseen and averted. The lot was unfenced, was bounded by the highways in which it is conceded the defendants had no lawful right to allow their horses to go unattended, and the common experience in great cities would justify a jury in finding that the defendants, in the exercise of reasonable care, must have known that this lot would be occupied on a warm summer evening by children at play, and that it was dangerous to allow their horses to run at large in the highways adjacent or in the lot itself. See Wasmuth v. Butler, 86 Hun, 1, 2, 33 N. Y. Supp. 108, where the court say that "it has become almost proverbial that no horse is safe to leave untied on the street." Moynahan v. Wheeler, 117 N. Y. 285, 287, 22 N. E. 702. In the case of Mahoney v. Dwyer, 84 Hun, 348, 32 N. Y. Supp. 346, the complaint alleged "that on the night of the said 15th day of October, 1892, the said heifer was negligently and carelessly permitted by said defendant to be in said highway, and that as the plaintiff passed along the said highway the said heifer sprang at him, and inflicted upon him severe and permanent injuries." It transpired on the trial that the heifer was not in a highway, but in a private lane used by the people as a thoroughfare. The court, in sustaining a judgment for the plaintiff, say: "It was not essential to show that the lane where the plaintiff was injured was a public street. A party has no right to put a dangerous animal in a place that he knows the public are in the habit of traveling." In this case, as in the case at bar, the negligence of the person permitting the animal to be in a public place is the gravamen of the action, and the exact locality of the accident, whether upon the highway or upon private premises open to the public, is not material. It may be said that the court bases its opinion upon the fact that it was a "dangerous animal"; but there is nothing to show that the evidence established that the heifer was known to be a dangerous animal, and it will hardly be contended that a heifer is a more dangerous animal than a horse turned loose in a public place.

In the case at bar, if the horse had broken into the lot without any negligence on the part of the defendants, thus becoming a trespasser, for which the owners would be answerable to the owners of the premises, the case would come within the rule adopted in O'Connell v. Jarvis, 13 App. Div. 3, 5, 43 N. Y. Supp. 129; but it has no relation to this action, which is for the negligence of the owners in permitting the horse to be at large under circumstances which made it probable that injury would result to persons.

The suggestion is made, in support of the judgment, that the law requires that the injury must proceed so directly from the wrongful act that, according to common experience and the usual course of events, it might, under the particular circumstances, have reasonably been expected (Jex v. Straus, 122 N. Y. 293, 301, 25 N. E. 478, and authorities cited), and that something of this certainty is lacking in the present case; but an examination of the authorities discloses no case in which the rule has been held applicable to facts

bearing any analogy to those here in evidence. The rule, as we have already shown by authorities, does not require that the particular accident should have been anticipated. It is satisfied if any danger was reasonably to have been anticipated from the conduct, and it cannot be said that it was unreasonable to suppose that a horse running loose in the highways, with access to an open plot, which appears to have been grown up to grass in some measure at least, would injure those who might get in his pathway. Such accidents are common to the experience of the world, and negligence in the control of animals capable of working injuries to others is universally recognized as giving a cause of action to those who suffer through such negligence. Benoit v. Railroad Co., 154 N. Y. 223, 227, 48 N. E. 524.

We are of opinion, therefore, that it was error on the part of the court at trial term to grant the motion for nonsuit, and to refuse the request of the plaintiff to go to the jury upon the issues. While we do not care to suggest that there was error in the exclusion of evidence, we are of opinion that the plaintiff, under properly framed questions, is entitled to greater latitude in showing the surroundings of the parties, as bearing upon the degree of care proper to be exercised, than was permitted upon the original trial.

The judgment appealed from should be reversed, and a new trial granted, costs to abide the event. All concur.