## McGEE v. SINCLAIR REFINING CO.
### No. 1636.

District Court, E. D. Pennsylvania.
July 22, 1942.

Freedman & Goldstein and Milton M. Borowsky, all of Philadelphia, Pa., for plaintiff.

Krusen, Evans & Shaw and Edwin Longcope, all of Philadelphia, Pa., for defendant.

GANEY, District Judge.

This is a motion on behalf of the defendant for judgment N.O.V. The plaintiff, Leo C. McGee, was employed as a fireman on the S. S. "E. R. Kemp", which tanker was owned and operated by the defendant company. On April 13, 1941, while the vessel was at sea and after relieving a watch in the fireroom, the plaintiff while walking across the after deck was bitten on the heel by a puppy dog belonging to another member of the crew as it dashed between his legs. The plaintiff was wearing slippers without any heel protection at the time and the alleged bite was at a place where the plaintiff had received an earlier injury in 1936 from a gun shot wound for which he received treatment for five or six months and it had left a heavy scar on the heel. Immediately after being bitten he went to his cot and noticed a trickle of blood but did not report the injury to any of the ship's officers but treated it himself with hot water and Epsom Salts. The vessel was bound for Houston, Texas, where upon its arrival no report was made of the injury, although he said he noticed pus about April 24th, and upon its arrival in New York Harbor, or more particularly Tremley Point, the plaintiff reported to Captain Svendsen, who the day before had replaced Captain MacLennan, who had been in command of the vessel during the trip, that he had an injury to his heel, caused by a dog bite. Captain Svendsen produced a signed statement by the plaintiff in which it stated that he had bruised his left heel, causing it to become infected while going down to the engine room to relieve the watch, but this was contradicted by the plaintiff who insisted that at the time he gave this statement to Captain Svendsen he told him that he had been bitten by the Chief Pumpman's puppy, but that the Captain told him not to mention that fact in the statement which he was to sign because it would get the Chief Engineer in trouble. Dr. J. C. Lyons examined his left heel on board ship and the plaintiff told him that he was afraid that he was going to have trouble with it, that it started to break down and he wanted his "opinion and advice as to what he should do". Dr. Lyons advised him to go to the hospital, which he did. He stayed in the Baltimore Hospital for a period of six weeks and was discharged on June 4, 1921, and told to use crutches; then came back to Philadelphia where he was treated by the Public Health for about six weeks and kept going to the Public Health for treatments to within about three weeks of trial. Neither of the plaintiff's two witnesses who testified on his behalf were present at the time of the alleged biting by the dog, although Goldstone, a seaman on the same ship, testified that McGee told him when he was leaving the ship that he had been bitten by a dog. At the time of the alleged injury there were three dogs and a cat on the ship

914

and the record is replete with testimony that they had complete run of the ship; that complaints were made by sailors because the dogs had made a mess of the deck; that one of the dogs had snapped at Walter Cody, one of the plaintiff's witnesses, which he reported to the captain; that another member of the crew had also been bitten by one of the dogs; that it was reported to the captain by members of the crew that he should get the dogs off the vessel because they scared them at night when they were going to relieve the watch, since they would bark and snap at them; that they were to be found on various parts of the ship, both on the afterdeck and foredeck, on the catwalk and even got down in the messroom.

Captain MacLennan, who had charge of the vessel, testified that plaintiff never reported any injury to him; that he kept his dog on the bridgedeck and that the pups on the ship were not permitted to roam the ship; that no one ever complained to him about the dogs being on board the ship. Captain Svendsen, who relieved Captain MacLennan at Tremley Point on April 27th testified that the plaintiff came to him that morning and said he wanted to be examined by Dr. Lyons and signed a statement that he had bruised his heel and denied that the plaintiff had told him about having been bitten by a dog. The Chief Engineer Robeau testified that the plaintiff never said anything to him about having been bitten until April 28th when the vessel had reached Marcus Hook, when the plaintiff requested to let him get off the ship on account of his foot. He denied that plaintiff said anything about having been bitten by a dog. The Chief Engineer said that his dog did not roam the ship, nor did any of the other dogs or puppies as they were unable to get down to the main deck unless carried down the ladders. The Third Assistant Engineer, James Williamson, testified that he had seen plaintiff some months before limping around and he told him that it was the result of an old gun shot wound on his heel; that the pups had always been kept in the Captain's quarters.

The jury rendered a verdict for the plaintiff in the sum of twelve hundred dollars ($1,200) and the defendant having moved the court to direct the verdict in its favor and the court having denied the motion, reserving the point, the defendant moved the court to set aside the verdict of the jury and enter judgment for the defendant. The case now comes before the court on this motion.

Two grounds are asserted in support of the defendant's motion: (a) that the plaintiff has not sustained the burden of proving that he was injured in the manner alleged; and (b) that the evidence does not show any negligence on the part of the defendant.

It is the rule that on an appeal from a judgment and verdict for a plaintiff in a negligence case all the relevant evidence and inferences from the evidence must be viewed in a light most favorable to the injured person and must be taken as true; all such unfavorable evidence or inferences must be rejected. Bell v. Shoff, 3 Cir., 89 F.2d 339; Frank v. Reading Company, 297 Pa. 233, 146 A. 598.

Defendant insists that the plaintiff has not met the requisite burden in this case by reason of the fact that there was no corroboration of the alleged bite of the plaintiff by the dog, except that of his fellow seaman, Goldstone, which was only to the effect that the plaintiff had told him that he was bitten; that there was evidence that Williamson, the Third Assistant Engineer, had seen him cut at the injured heel with a pocket knife, which was loaned to him by Williamson, which McGee denied; and further that the infection which the plaintiff had acquired was due to the fact that it was an old injury which had recurred through a breakdown of the tissue, which might possibly be caused by irritation from shoes or slippers. However, these were all questions of fact which the jury resolved and the instant case differs from those pressed upon the court by counsel for the defendant as in Fort Smith Gas Co. v. Cloud, 8 Cir., 75 F.2d 413, 97 A.L.R. 833, where the court from an examination of the whole record denied recovery to the plaintiff as it could not determine whether the exposure which the plaintiff was subjected to while waiting in an unheated house or the going in and out of warmly heated rooms to telephone and do other things was the cause of the pneumonia which resulted in his death. Nor as in Miller v. Director General of Railroads, 270 Pa. 330, 113 A. 373, where decedent contracted erysipelas from an injury received across the bridge of his nose, and from which it was contended that pneumonia later developed from which he died, since it was also brought out in the plaintiff's side of the case that the pneumonia might also have been caused by cystitis, from which he was suffering at the time and which according to the doctor's testimony

could be transmitted to the lungs and cause pneumonia. These cases which have been pressed upon the court are readily distinguishable from the facts in the instant case, as in these cases, the jury had no real evidence from which to decide from the plaintiff's testimony, which of two possible causes for the injury stated therein, was the proximate one from which the injury followed as the natural and probable result. The cases cited by the defendant state the long settled rule, and one in which the court, while in agreement therewith, holds is inapplicable in the disposition of the present case, to wit: that laid down in Bruggeman et ux. v. City of York, 254 Pa. 430, 98 A. 970, 971: "It is not enough for plaintiffs to show the injury complained of was due to one of two or more possible causes if defendant was responsible for but one of them. They must go further and show the latter cause was the proximate one from which the injury followed as the natural and probable result, and that the events leading up to the injury are linked in succession together as a natural whole without intermediate cause not attributable to defendant's wrongful act". The plaintiff has alleged only one cause for the injury here and that was the opening up of an old wound by the bite of the dog. True it is that a number of possible suggestions as to the cause of the injury were made by the defendant, to wit: that the plaintiff had cut the heel with a pocket knife and that rubbing and irritation of a shoe may cause the same or that the tissues break down by deterioration which caused the infection, but this cannot be passed on on a motion for judgment n.o.v. as these questions of fact were resolved by the jury in favor of the plaintiff. Accordingly, I feel there was sufficient evidence offered by the plaintiff in this case for a jury to pass upon.

The next question raised by the motion is that there was no negligence shown on the part of the defendant.

▆▆▆ Counsel for the plaintiff tried the case not on the theory that the dog which bit the plaintiff had a vicious tendency but on the theory as offered in the complaint that the defendant did not provide a safe place for him to work. While the facts may be novel and while research has failed to disclose a similar factual situation in which the court held that the circumstances created an unsafe place for a seaman to work, I have no hesitancy in holding that a situation was created on board the vessel from which it was reasonably foreseeable that harm in some form or another would result to members of the crew by reason thereof. There was evidence that the dogs were not confined; that they had the run of the ship; that they would run across the bridge, the fore and after decks, in and about the crew's quarters, in the engine room, in the fireroom, and that they had snapped at members of the crew and had bitten an able-bodied seaman, and also that seamen were scared at night by reason of them, when they were taking over the wheel; that the sailors made complaint about the dogs and their conduct on board the ship on at least two occasions; and that the dogs on occasion would bite. As is stated in 3 Corpus Juris, page 93, § 323: "it is not necessary that the animal should be vicious to make the owner responsible for injury done by it through the owner's negligence. The vice of the animal is the essential fact, when, but for it, the conduct of the owner would be free from fault". See, also, 3 C. J. S., Animals, § 151. I feel that as has been stated in Storgard v. France and Canada S. S. Corp., 2 Cir., 263 F. 545 that the peculiar circumstances which are attendant upon a seaman's discharge of his duties require that the rules of common law respecting proof of the employer's negligence be not visited too vigorously upon seamen. Further in Farber v. Roginsky, 123 App.Div. 38, 107 N.Y.S. 755, 756, the plaintiff and defendant owned horses which they stabled in separate stalls, and the plaintiff's horse was injured by the kicking of the defendant's horse, which was not properly haltered. The lower court held that the defendant must be shown to have actual or presumptive knowledge that the horse had been guilty of such or similar mischief. The appellate court said: "The flaw in this conclusion is that the cause of action for negligence in such cases does not necessarily require proof of scienter, but it may also rest upon mere failure of the owner to exercise due care in the keep of the horse. Moynahan v. Wheeler, 117 N.Y. 285, 22 N.E. 702; Mills v. Bunke, 59 App.Div. 39, 69 N.Y.S. 96; Dickson v. McCoy, 39 N.Y. 400". In Goodman v. Gay, 15 Pa. 188, 53 Am.Dec. 589, a child was kicked by a horse which was permitted to run loose on the city streets by its owner. In upholding a verdict for the plaintiff (page 194 of 15 Pa., 53 Am.Dec. 589) the court said: "The gist of the action is, that the defendant did an act, not sanctioned by law nor custom, from which he must have

known injury might result. * * * In other words, the defendant was guilty of negligence, and the plaintiff was guilty of none; and therefore the defendant is liable to the action, without proof that he knew the animal was vicious."

I feel that the bite by the dog of the plaintiff in view of the circumstances which existed on the ship with relation to it and the other dogs there on board and the fact that the circumstances were brought home to the responsible officers on the ship made the episode clearly foreseeable and that it was a matter that a reasonably prudent person would under the circumstances anticipate as likely to happen—a legal requirement requisite for recovery. Milwaukee, etc., v. Kellogg, 94 U.S. 469, 475, 24 L.Ed. 256; Johnson v. Kosmos Portland Cement Co., 6 Cir., 64 F.2d 193.

It has been urged upon the court that if this verdict is permitted to stand the traditional ship's mascot must become a thing of the past, since from time immemorial seamen have taken their pets along to sea with them, to overcome the loneliness of their idle hours. The result reached in this case will in no wise trespass the traditional right of seamen to have mascots or pets aboard their ship, but only lays down the requirement that owners of vessels shall require that they be so restrained that they will in no wise make the occupation of the seamen more hazardous and that such control be had over them as to provide a safe and proper place for the performance of the seamen's duties.

Motion for judgment is denied.