FETZER, Appellant, v. THE ABERDEEN CLINIC et al,
Respondents.

(204 N. W. 364.)

(File No. 5624.   Opinion filed June 3, 1925.)

1. **Hospitals—Physicians—Negligence—Physicians and Hospital Authorities Not Required to Take Precautions, Except Such as Reasonable Persons Might Anticipate Would be Necessary.**

No care or precaution is required of physicions or hospital
authorities, except such as reasonable persons might anticipate
to be necessary, and in action by one, who while patient in
hospital and in state of delirium climbed or fell from third-
story window, sustaining serious injuries, instruction that de-
fendants were not required to anticipate that delirous patient
would throw himself from window, and that plaintiff could
not recover unless evidence showed that he was possessed of
tendency to inflict self-injury, or intention to escape from
building, and that defendant had knowledge thereof, was not
erroneous when considered with other instructions.

2. **Negligence—No One Required to Guard Against That Which Person Would Not Anticipate.**

No one is required to guard against or take measures to
avert that which reasonable person under circumstances would
not anticipate as likely to happen.

3. **Hospitals—Evidence—Burden of Proof—Patient Suing for Injuries From Fall While Delirous Has Burden of Showing His Own Mental Incapacity and Notice to Defendants.**

Plaintiff, suing physician and hospital authorities for injuries
sustained by him while a patient when in state of delirium he
fell or climbed from third-story window, has burden of estab-
lishing his own mental incapacity and notice thereof to defen-
dants, to escape charge of contributory negligence.

4. **Trial—Instructions—Instructions as to Physician's Individual Liability for Negligence as Officer of Clinical Corporation not Misleading.**

In action against physician and clinic building corporation,
owning and operating hospital, of which corporation physician
was officer, for injuries sustained by patient from fall while
delirious, due to alleged negligence of defendant, insruction
that any negligence of physician as officer of corporate defen-
dant would not justify a verdict against him personally, though
not well worded, held not erroneius or misleading when consid-
ered with other instructions permitting recovery against him
for any negligence while acting as personal physician for
plaintiff.

5. **Evidence — Expert Testimony — Permitting Defendant Physician Charged With Negligent Care of Patient to Give Expert Testimony Concerning Patient's Conduct Not Error.**

In action against physician and clinic corporation operating hospital for injuries to delirious patient from alleged negligence of defendants, it was not error to permit defendant physician to testify that before accident he had examined plaintiff and that there was nothing in his conversation, appearance, or demeanor that, from his knowledge and judgment as a physician, would cause him to anticipate attempt at self-injury.

6. **Trial—Damages—Evidence—Striking of Uncertain Testimony in Patient's Action for Damages for Injuries Through Alleged Negligence of Physician and Hospital Authorities Held Not Error.**

In patient's action for injuries sustained from fall from third-story window while delirious, it was not error to strike testimony of particular witness that on night before accident plaintiff had said he was going to kill himself or some one was going to kill him or he was going to die, in view of further testimony by same witness that he did not remember exactly, and that plaintiff might have merely said that he was afraid he was going to die.

7. **New Trial—Newly Discovered Evidence—Affidavits Showing Newly Discovered Evidence Largely Consisting of Conclusions and Hearsay Not Favored.**

Affidavits in support of motion for new trial on ground of newly discovered evidence which show that alleged newly discovered evidence consists largely of conclusions and hearsay are not favored, and denial of motion supported by such is not abuse of discretion.

Appeal from Circuit Court, Brown County; HON. R. D. GARDNER, Judge.

Action by John L. Fetzer against the Aberdeen Clinic, the Clinic Building Corporation, and R. L. Murdy. Judgment for defendants, and from the judgment and an order denying a new trial, plaintiff appeals. Affirmed.

*Thomas L. Arnold* and *Van Slyke & Agor,* all of Aberdeen, for Appellant.

*Corrigan & Walton, McNulty & Campbell,* and *Ed. L. Grantham,* all of Aberdeen, for Respondents.

(2)   To point two of the opinion, Appellant cited:   165 N. Y. S. 17; Wetzel v. Omaha Maternity & General Hospital (Neb.),

148. N. W. 582; Robertson v. Charles B. Townes Hospital, 165 N. Y. S. 17; Hogan v. Hospital Company, 63 W. Va. 84, 59 S. E. 943; Dorr v. Durfee (Ark.), 186 S. W. 62; University of Louisville v. Addie Hammock, 14 L. R. A. (N. S.) 784; Broz v. Omaha Maternity & General Hospital Assn., 7 C. C. A. 298.

Respondent cited: Ry. Co. v. Elliott. 5 C. C. A. 347, 55 Fed. 949; Ry. Co. v. Callaghan, (6 C. C. A. 205, 56 Fed. 988; Ry. Co. v. Mosely, 6 C. C. A. 641, 57 Fed. 921; Ins. Co. v. Melick, 12 C. C. A. 544, 65 Fed. 178; Ry. Co. v. Kellog, 94 U. S. 469; Hoag v. Ry. Co., 85 Pa. St. 293, 298, 299; St .L. & F. Ry Co. v. Bennett, 69 Fed. 525; Davis v. Sprinfigeld Hospital (Mo.), 218 S. W. 696; Breeze v. Railroad, 264 Mo. 258, 174 S. W. 409; Torrey v. Riverside Sanitarium, 163 Wis. 71, 157 N. W. 552; Harris v. Woman's Hospital, 14 N. W. S. 881.

(4) To point four, Appellant cited: American & English Ency. of Law, 2nd Ed., p. 893; Everetts v. Warell (Utah)., 197 Pac. 1047; Yard v. Gibbons, 149 Pac. 422; Beck v. The German Clinic, 43 N. W. 617.

Respondent cited: Harris v. Fall, 177 Fed. 79; Morevy v. Thybo, 199 Fed. 760.

MORIARTY, Circuit Judge. The appellant John L. Fetzer, who was the plaintiff in the trial court, brought this action against the respondents, the Aberdeen Clinic, a corporation, the Clinic Building Corporation, a corporation, and R. L. Murdy, who were defendants in the trial court.

The action was brought for the recovery of damages for personal injuries suffered by appellant, and which he claims were due to negligence of the respondents.

The evidence shows that in February, 1923, the appellant came to Aberdeen, suffering from pains. He employed the repondent R. L. Murdy, a practicing physician and surgeon at Aberdeen, to diagnose and treat his ailment. Dr. Murdy diagnosed the ailment as appendicitis and advised appellant that he should submit to an operation. On taking charge of the case, Dr. Murdy sent appellant to the Lincoln Hospital at Aberdeen, a hospital owned and operated by the respondent the Clinic Building Corporation. At this hospital Dr. Murdy operated on appellant, removing the appendix, and left the appellant in charge of the hos-

pital. For four or five days after the operation Fetzer was kept in a double room of the hospital with another patient. After that time he was removed to a single room on the third floor of the building. A special nurse was not provided for him, but nurses in general attendance visited his room at intervals of about 30 minutes, day and night. At about 9 o'clock in the morning of the sixth day after the operation Fetzer was found lying on the ground under the window of the third-story room which he had occupied, apparently having fallen or jumped from said window. From this fall Fetzer suffered serious injuries, consisting of fractures and the re-opening of the incision made at the time of the operation.

It is admitted that appellant had been restless for a night or two previous to the accident, but there is some conflict of evidence as to whether he showed any delirium or irrational symptoms at any time prior to the accident.

The undisputed evidence shows that the room Fetzer had occupied just prior to the accident had but one window, and that this window had a storm window on the outside; that shortly before the accident the inside window was fastened by an ordinary fastener at the top and the storm window was closed and hooked. The evidence further shows that after the accident the inside window was found to be open and the storm window springing out at the bottom by the extension strips or rods provided for securing ventilation. Fetzer testified that he had no recollection as to getting out of the window, or as to why he did it. There is some evidence that shortly after his fall Fetzer said that he opened the window and got out backward, as if going down a ladder; that he hung by his arms and tried to get back into the room but could not do so, and fell. There is also some evidence that he said he got out of the window because he thought some one was chasing him.

The evidence further shows that the Aberdeen Clinic is an association of physicians and surgeons patronizing the Lincoln Hospital; that some of the persons so associated are stockholders and officers of the Clinic Building Corporation; but that the Aberdeen Clinic as a corporation has nothing to do with the control or operation of the Lincoln Hospital. It further shows that the Lincoln Hospital is owned, controlled, and operated by the Clinic

Building Corporation, which employs its nurses and attendants and charges for the rooms, care, and attendance furnished to patients. It is admitted that Dr. Murdy is a member of the Aberdeen Clinic and a stockholder and officer of the Clinic Building Corporation, but he was not an employee of that corporation, nor in any way engaged in the management or operation of the hospital, except in so far as he gave instructions as to care or treatment of his personal patients. It is shown by the evidence that Dr. Murdy received reports from the nurses as to the condition of the appellant, consulted the records shown by their charts, and made personal inspections and examinations as to appellant's physical and mental condition.

At the close of the evidence the trial court directed a verdict in favor of the defendant Aberdeen Clinic, but allowed the questions as to the liability of the defendants Clinic Building Corporation and R. L. Murdy to go to the jury. The jury returned a verdict in favor of these defendants, and judgment was entered upon said verdict.

The appellant moved the trial court for a new trial, and that court denied the motion. From judgment and the order denying the motion for a new trial appellant presents this appeal.

The contentions of appellant's counsel are set forth in six assignments of error. With the exception of assignment No. 6, which deals with showings as to newly discovered evidence, the only questions raised are as to exceptions taken to the instructions under which the trial court submitted the case to the jury. These exceptions present questions as to the kind of care which hospitals are required to give to delirious or irrational patients. These are questions which have not heretofore been presented to this court, and upon which there is some divergence in the decisions of other courts.

In Torrey v. Riverside Sanitarium, 163 Wis. 71, 157 N. W. 552, the Wisconsin court, speaking of matters similar to those involved in this case says:

"There are probably no questions more delicate than the questions arising as to the proper care of such patients."

In referring to these questions as delicate questions, that court undoubtedly meant that close distinctions must be drawn to allow for even slight differences in the facts, and that it is difficult to

lay down any hard and fast general rule which can be made to apply to any considerable number of cases.  A careful reading of the authorities cited by counsel on the respective sides of the case at bar will disclose the force of this statement.  No two cases cited are similar as to the facts, and, where liability has been sustained in one case and denied in the other, the opinions disclose the fact that the diverse results are not due to any great divergence in the views of the courts, but rather to nice distinctions as to differences in the facts.  In other words, each case must stand upon its own merits as disclosed by the evidence, subject only to broad general rules as to what constitutes negligence and the degree of care required in broad general classes of cases.  The question as to the general class into which any given case will fall is the delicate question, and that question must be determined from the facts in each particular case.

What rule should be applied to the case at bar must be determined by considering the contentions of the parties as to each of appellant's assignments of error, and applying the general rules of law to the facts involved in such contentions.

[1]   Appellant's first assignment of error is as follows:

"The trial court erroneously instructed the jury that defendants could not be required to anticipate that a delirious patient might throw himself from the window of his room, and the plaintiff would not be entitled to recover, unless the evidence showed that he was possessed of a suicidal intent or tendency to inflict self-injury, and that defendants had knowledge thereof."

This assignment, however, does not properly set forth the instructions of the trial court in that connection.  The full text of the instructions upon this point reads as follows:

"The court instructs the jury tha the degree of care and diligence required is measured both by the mental incapacity of the patient and the dangers which the surroundings indicate may befall such patient in view of any peculiar mental traits exhibited by the patient.  This is always limited by the unbending rule that no one is required to guard against or take measures to avert that which, under the circumstances, is not likely to happen, or, more accurately, which a reasonably prudent person under the circumstances would not anticipate as likely to happen.  No man does

or is required to take measures to avert dangers which the circumstances as known to him do not suggest as reasonably likely to happen. These circumstances include the patient's mental condition and aberrations and what he is likely to do by reason thereof. That a patient may be delirious or not in control of his mental faculties is not sufficient to put the defendant, its agents, servants, or employees on their guard to prevent self-inflicted injury. It is only when they have notice of conduct or language on the part of the patient evidencing an hallucination or a purpose to inflict such injuries, and in this case, unless the defendants, their' agents, servants, and employees had notice or knowledge of conduct or condition of mind on the part of the plaintiff which indicated that he intended self-injury or self-destruction, or intention to escape from the building, then I instruct you, as a matter of law, the plaintiff cannot recover in this action."

Had the trial court given the exact words stated in the assignment, and nothing more, it may be that such instruction would have constituted prejudicial error, but the complete paragraph of the instruction, as above quoted, instructs the jury that they should consider the mental incapacity of the patient and the dangers which the surroundings indicate, the patient's mental condition, and what he is likely to do by reason thereof. This instruction follows quite closely the rule enunciated by the Court of Appeals of Missouri in the case of Davis v. Springfield Hospital, 204 Mo. App. 626, 218 S. W. 696, and the language of the instruction is in part directly quoted from the court's opinion in that case.

[2] While there are decisions affirming judgments for damages on claims somewhat similar to the case at bar, and other decisions denying liability in cases varying but little therefrom, there seems to be no material divergence from the rule laid down in this instruction. And, this question being now presented to this court for the first time, we cite with approval the words of the Missouri court, where it announces as an—

"unbending rule that no one is required to guard against or take measures to avert that which a reasonable person under the circumstances would not anticipate as likely to happen."

This is the rule which the instructions in the case at bar, taken as a whole, gave to the jury as their guide. References to

a delirious condition, intent to commit suicide, and other like expressions in the instructions are merely efforts to apply this rule to the evidence, and, taking into consideration the care taken by the trial court to make the instructions include all possible phases of the evidence, the instructions as a whole are complete and correct as to anything included in appellant's first assignment of error.

That the rule here followed by us is grounded upon a sound legal basis. will be more apparent from a consideration of the entire scope of the question involved. It is evident that in this case, and in all similar cases, the injuries complained of are directly due to the acts of the person suffering the injuries. Under the general rule of law the contributory negligence of the injured person would bar any recovery on his part, or on the part of his representatives. It is only on the theory that the incapacity of the person injured removes his case from the general rule that any recovery can be had.

[3] Evidently, then, the burden is clearly upon those seeking to be relieved from this general rule to show such incapacity, and notice thereof to those sought to be charged. And it is further evident that this notice of the condition of the patient must be such as to give those sought to be charged reason to believe that his doing injury to himself may be anticipated. There is no harshness in this rule. On the other hand, to hold hospitals, nurses, or physicians responsible for injuries which parents may inflict upon themselves, unless the patients have given evidences of the probable danger of such infliction of injury, would be a harsh rule indeed. Those seeking to be relieved from a well-established rule of law, such as that dealing with contributory negligence, must be required to show that they are clearly entitled to be so relieved.

[4] Appellant's second assignment of error is as follows:

"The court erred in giving defendant's requested instruction No. eight, as follows: 'The court instructs the jury that, if you find from the evidence in this case that the defendant R. L. Murdy was an officer, director, and member of the defendant, the Clinic Building Corporation, which owns and operates the Lincoln Hospital, and if, as such officer, member of the surgical staff, or employee, the said R. L. Murdy was negligent under all the facts and

circumstances in this case, such finding upon your part would not justify any verdict in any sum against the said R. L. Murdy personally, although said negligence on his part in such capacity might be imputed to his principal, the Clinic Building Corporation."

While this paragraph of the instruction may be not happily worded, and standing alone might confuse the jury, taken in connection with other portions of the charge, it cannot have been misleading to the jury or prejudicial to appellant. It is evidently and expressly limited to the acts of the defendant R. L. Murdy as an officer, member of the surgical staff, or employee of the Clinic Building Corporation. It does not in any way limit the right of the jury to hold the defendant Murdy liable for any negligence in performing any of the duties which he owed to the appellant as his personal physician and surgeon.

That this is true is made clear by other parts of the instructions wherein the trial court makes plain the limitations of liability of the different defendants; that part relating to the liabiliy of Dr. Murdy being as follows:

"The court further instructs the jury that, if you believe and find from a preponderance of all the evidence in this case that the defendant R. L. Murdy carelessly and negligently failed to give plaintiff such reasonable care and attention as his mental and physical condition required in so far as his mental and physical condition were known to the said defendant, then and in that event your verdict should be for the plaintiff and against the defendant R. L. Murdy upon all the issues, and you should assess plaintiff's damages in such a sum of you shall find will compensate him for all the detriment proximately caused thereby, not to exceed the sum of $25,000."

Appellant's assignments Nos. 3 and 4 deal with the same questions discussed in treating of the two previous assignments. Adopting the rule that no care or precaution is required except such as reasonable persons might anticipate to be necessary, all the elements are included in the instruction complained of in assignment No. 3. It is not true, as appellant's counsel assert, that this instruction makes the judgment of Dr. Murdy the sole test of whether extra precautions for appellant's safety were necessary. The instruction includes also the right of the jury to determine

what Dr. Murdy found as to the mental and physical condition of his patient and whether he had any notice of any threat or intent of appellant to do himself an injury or to escape from the building. Taken in connection with the other portions of the entire charge to the jury, there was no error in the giving of this instruction.

[5] As to the admission of the evidence of Dr. Murdy complained of in assignment No. 4, this is closely related to the matters covered by the instruction complained of in assignment No. 3. Dr. Murdy was allowed to testify that, when he examined appellant shortly before the accident, there was nothing in appellant's conversation, appearance, or demeanor that from the witness' knowledge and judgment as a physician would cause him to anticipate that the patient would attempt to do himself harm, or that in witness' experience or judgment would require or reasonably need any care or treatment other than he was receiving.

These items of testimony are objected to as conclusions, and as invading the province of the jury. They are conclusions, but the witness Dr. Murdy is being sued as a physician required to furnish the skill, knowledge, and care usually exercised by physicians and surgeons. He was qualified to testify as a medical expert, and as such had the same right to testify as to his conclusions that any other expert would have. The jury, of course, had the right to weigh his evidence as it would that of any other witness, taking into consideration also his interest in the suit. There was no error in admitting this evidence.

[6] Appellant's assignment of error No. 5 complains of the act of the trial court in striking out the evidence of Roy Von Eschen. This witness testified that on the night before the accident he helped move the appellant from the double room to the single room in the hospital. He testified that while he was being moved appellant said either that he was going to kill himself or some one was going to kill him or he was going to die. "I did not pay much attention to him. I don't remember exactly what he did say. It might have been that he said he was afraid he was going to die."

On motion of respondents this testimony was stricken out. Evidently this action was correct. The difference between a statement that he was going to kill himself and that he was afraid he

was going to die is so great that, when the witness could not tell which was said, the jury should not be called upon to conjecture which it might be. There was no error in striking out this testimony, or in instructing the jury to disregard it.

In his assignment of error No. 6 appellant says that the court erred in refusing to grant a new trial for all the reasons set out in the foregoing assignments, and upon the further ground of newly discovered evidence set forth in affidavits.

[7] These affidavits are four in number, to wit, one by Ilomay Rummel, one by John A. Bailey, and one by Minnie Von Eschen setting forth the alleged newly discovered evidence, and one by H. Agor, showing alleged diligence in searching for evidence and facts relied upon to excuse the failure to produce the additional evidence at the trial. Inspection of the affidavits shows that much of the alleged newly discovered evidence consists of conclusions and hearsay. Applying the well-established rule laid down by this court, that such applications are not looked upon with favor, there is nothing in the affidavits to show that the trial court abused its discretion in denying a new trial on the ground of newly discovered evidence.

Finding no error in the acts of the trial court, the judgment and order appealed from are hereby affirmed.

MORIARTY, Circuit Judge, sitting in lieu of CAMPBELL, J., disqualified.

DILLON, J. 1 dissent from views expressed, and think this case should be reversed and remanded for a new trial. I cannot agree that the injuries complained of are due to the acts of the injured man. The defendants pleaded contributory negligence on the part of the plaintiff and contended that neither the defendant corporation nor any employee thereof was guilty of negligence. It was the duty of the defendants, nurses, and physicians, to anticipate danger. One of the witnesses, Dr. Pettinger, testified that after patients have been operated on for appendicitis "they kind of think some one is chasing them"; that after the accident he asked the plaintiff how he happened to go out of the window, and was told that the plaintiff thought some one was chasing him, and that he went through the window to get away from his imaginary pursuer. The defendants should neither be allowed to

shift their responsibility by asserting contributory negligence on the part of the plaintiff, nor to relieve themselves of a plain violation of duty which was due the patient.

I think the court committed numerous errors in giving their instructions to the jury. It was an error to instruct the jury to exclude the testimony of one of the witnesses, Roy Van Eschen, on the ground that it was uncertain and indefinite. This should have been left for the jury to decide. I think the court again erred in placing the burden upon the plaintiff to show suicidal intent. The doctor had been informed of the condition of the plaintiff, and it was his duty to see that he was protected from injuring himself. It was an error to permit Dr. Murdy to shield himself by testifying that he used his best judgment, and then to instruct the jury that, if he did use his best judgment, neither he nor defendant hospital would be liable. It was an error to instruct the jury that hospital attendants are not required to anticipate that a patient who is delirious and possessed of delusions, but showing no tendency to self-destruction, would throw himself out of a high window, and are thus not required to guard against such an act. The record clearly shows that plaintiff was in an irrational state of mind from Tuesday evening, January 27, to Saturday morning, March 1st, prior to the accident, which resulted in permanent injury to him. His conversation with one Jung on Thursday evening showed him to be in a delirious state of mind, and his physical condition indicated that there was something decidedly wrong with him. His face was flushed and his eyes were rolling.

These prejudicial instructions to the jury were so emphasized that the jury could not possibly do otherwise than find for the defendants.

In my opinion, the newly discovered evidence, in connection with the errors above cited, entitle plaintiff to a new trial.

Note.—Reported in 204 N. W. 364. See, Headnote (1), American Key-Numbered Digest, Hospitals, Key-No. 204(7), 30 C. J. Secs. 18, 32, Negligence, 29 Cyc. 433, Trial, 38 Cyc. 1785; (2) Negligence, Key-No. 1, 29 Cyc. 432; (3) Hospitals, Key-No. 8, 30 C. J. Sec. 30; (4) Trial, Key-No. 296(3), 38 Cyc. 1786; (5) Evidence, Key-No. 510, 22 C. J. 759; (6) Trial, Key-No. 89, 38 Cyc. 1403; (7) New Trial, Key-No. 103, 29 Cyc. 898.