**FORT SMITH GAS CO. v. CLOUD.**
**No. 9987.**

Circuit Court of Appeals, Eighth Circuit.
Feb. 4, 1935.

Fred S. Armstrong and Vincent M. Miles, both of Fort Smith, Ark. (Miles, Armstrong & Young, of Fort Smith, Ark., on the brief), for appellant.

John P. Roberts, of Fort Smith, Ark., for appellee.

Before STONE, GARDNER, and VAN VALKENBURGH, Circuit Judges.

GARDNER, Circuit Judge.

This is an action to recover damages for personal injuries alleged to have been suffered by appellee on account of the negligent delay of the appellant in installing a gas meter with proper connections at a house about to be occupied by appellee and his family in Van Buren, Ark. The parties will be referred to as they appeared below.

Defendant is a public utility, engaged in the sale and distribution of natural gas in the cities of Fort Smith and Van Buren, Ark. Plaintiff secured judgment, and defendant has appealed, alleging that the court erred in denying its motion for a directed verdict, and in overruling its objections to the testimony of certain expert witnesses.

Van Buren is located on one side of the Arkansas river, directly opposite the city of Fort Smith, and they are approximately 3 miles apart. The defendant maintains offices in each of these cities. Plaintiff had for a number of years been a resident of Fort Smith, but on the afternoon of February 7, 1933, he had his household effects

moved to Van Buren and there placed in a vacant house in which he intended to live. He testified, and, in considering the ruling of the court in denying defendant's motion for a directed verdict, we must accept this testimony as true, that on the evening of the 7th, he called at the office of the defendant in Van Buren, for the purpose of ascertaining how early the gas could be turned on in the house to which he was moving, and was then advised that it could be turned on "immediately after work hours after your deposit is made." On the morning of the 8th, plaintiff, having remained overnight with his son-in-law in Fort Smith, went with his son-in-law to the office of the defendant at Fort Smith, arriving there about 8 o'clock, to see if his meter deposit had been transferred from the Fort Smith office to the Van Buren office of the company. Finding that it had not been so transferred, he went to the shop where his son-in-law was working, borrowed the money from him, boarded a street car and rode to Van Buren, where he went to the office of the defendant and made the required meter deposit. It is not definitely shown when he arrived at the defendant's office in Van Buren and made his deposit. The office girl in the office of defendant at Van Buren testified that he arrived at the office between 9 and 10:30 a. m. Plaintiff testified that this office girl told him that, "They will be right out immediately and turn the gas on."

Plaintiff then went to the house in Van Buren to which he was moving, and did some work in connecting up the heaters. His wife and family arrived between 11 and 12, and he then went to the telephone and called the office of the defendant. He then returned to the house and waited until 2 or 3 o'clock in the afternoon, at which time he again went to the telephone and called the defendant's office, and was assured that some one would be out to install the meter. Defendant's mechanic came with the meter about 4 o'clock p. m., and made the necessary connections and installation.

The wife and children of plaintiff went to a neighboring house about 150 feet distant from the house in question, where they were comfortable, but plaintiff remained in and about the unheated house, except for the times he went to make the telephone calls, until the mechanic arrived. It was zero weather, and for a while plaintiff maintained a fire in the yard, burning up a lot of paper and débris. He was normally dressed, and wore an overcoat.

Following the installation of the meter, plaintiff and his family arranged the furniture in the house, and some time that night plaintiff had a chill. He did not remain in bed the next day, but worked at his usual occupation, and he did not call a doctor for several days. He was taken sick with pneumonia and confined to his bed for six weeks. There was considerable medical testimony from which it conclusively appears that plaintiff is tubercular and had been afflicted with tuberculosis before he was exposed in the cold house, and before he took pneumonia. One doctor called as a witness for plaintiff testified that he visited plaintiff professionally on the 16th and 21st of February, and that "it occurred to me that he might have tuberculosis, judging from the condition of the man's body and his makeup and apparently run down condition. The condition I found him in would not have been caused by pneumonia." There was testimony elicited from plaintiff's own witnesses to the effect that if plaintiff had, on the 8th of February, ridden on a warm street car from the city of Fort Smith to the city of Van Buren, and had gone out in the cold air, and had during the day been in a warm room in a house about three times for the purpose of telephoning, and had on such occasions gone out in the cold air, the exposure caused thereby might have produced the pneumonia; that going from a warm room out in the cold air would tend to cause pneumonia just as much as standing out in the cold air. The same witness testified: "I am sure that Mr. Cloud had tuberculosis infection, for pneumonia cannot cause tuberculosis."

The only evidence introduced by plaintiff to establish negligence was that while the meter was ordered installed some time between 9 and 11 o'clock a. m. on the 8th of February, the temperature being around zero, it was not installed until 4 p. m. on that date.

On behalf of the defendant, it was shown without dispute that on that date, owing to the extremely cold weather, there were a number of emergency calls from its regular customers. The local manager was the only mechanic in charge of the system at Van Buren, and he testified that he received a call about 8:30 in the morning to see about a customer who was out of gas because of a frozen regulator. Concerning this, he testified: "I had to go out and thaw out the regulator and see that the gas stayed on, because of a case of sickness in the house."

He then went to another customer's house who had the same trouble. A third customer came to him with a complaint that he was out of gas, and the witness went to this third place to serve the emergency call. Concerning these three calls, he testified: "I had to spend some time at each place because of the nature of the equipment. I didn't want it to freeze and stick again, and have to make a second trip back to it." He was then called to a restaurant in answer to an emergency call. He was later notified of a leak in the gas lines on the free bridge at Van Buren and went to examine these, which involved the examination of four gas mains running the entire length of the bridge. He then had a further emergency call requiring the making of a disconnection. He made these calls by car, and because of the cold weather he had car trouble. As soon as he had answered these emergency calls of customers who were already being served by defendant, he went to the plaintiff's house and installed the meter at about 4 p. m. It is the practice of the company to take care of customers who are already on the line, in case of emergencies, in preference to other calls. The witness testified: "I pursued this policy on the day of the 8th. I set Mr. Cloud's meter as soon as I had made the emergency calls that were in. In cases of abrupt change to cold weather, we have more service calls than ordinarily."

It is urged that the court erred in refusing to direct a verdict for the defendant because (1) the evidence clearly shows the defendant was not guilty of negligence; (2) the plaintiff was guilty of contributory negligence; (3) the verdict of the jury was based upon surmise and conjecture.

It appears that defendant's mechanic from the time of plaintiff's call until he was served was not loitering about or unoccupied, but was constantly engaged in fulfilling emergency calls of defendant's then customers, so that the question presented is whether defendant should have put aside some of these other calls in order to give plaintiff, a new customer, preferred service. There is nothing to indicate that the demand of the plaintiff was more urgent, or that it implied greater emergency than that of the other calls of old customers which were served. Defendant, in serving plaintiff, followed its established practice of serving the emergency demands of its then customers before taking on new customers. Actionable negligence is not an abstraction, but is to be determined by the circumstances surrounding each case. It is the absence of proper care under the circumstances. Had defendant in the circumstances here presented given preference to plaintiff's demand for service over the demands to serve emergency calls, would it not have subjected itself to a charge of actionable negligence by those properly demanding emergency service? The burden of proof was upon him to show negligence and that such negligence was the proximate cause of his injuries. It is urged that his demand was for an emergency service, and that failure to promptly respond thereto resulted in his exposure in the unheated house while he was waiting for the mechanic to arrive.

While the weather was cold, it is observed that plaintiff's young son was outdoors skating most of the time while plaintiff was waiting for the arrival of the mechanic. Part of the time plaintiff was occupied about a fire in the yard, in which he was burning up débris from the house and yard preparatory to occupancy of the house. Had he been actively engaged in physical exertion within the house, it seems improbable that it would have been injurious to his health, even though the house were unheated. He, however, claims that he simply remained idly inactive in this unheated house while he waited for the mechanic. That he need not have done so appears from the fact that his wife and certain members of his family remained at a neighboring house where they were comfortable, and that he could, without inconvenience or discomfort, have remained there, and, under the circumstances here disclosed, the defendant could not reasonably have anticipated that plaintiff would so unnecessarily expose himself, as he claims to have done. Even if it could be said that there was unreasonable delay in installing this meter, such delay was not the proximate cause of plaintiff's injuries, and to constitute actionable negligence the injury must have been the natural and probable consequence of the alleged negligent act. The consequence of the negligent act must be within the range of probability as viewed by the ordinary man, and consequences which are merely possible cannot be regarded as either probable or natural. The alleged consequences of the act here claimed to have been negligent are not such as could reasonably have been foreseen or anticipated. One is bound to anticipate only the reasonable and natural consequences of his conduct. Defendant could not reasonably have anticipated that plaintiff, a man of mature

years, would remain exposed, idle, and inactive, in this unheated house in zero weather for some seven hours. As has already been observed, it was wholly unnecessary that he do so. No one is required to guard against that which a reasonably prudent person, under the circumstances, would not anticipate as likely to happen. St. Mary's Hospital v. Scanlon (C. C. A. 8) 71 F.(2d) 739; Davis v. Schroeder (C. C. A. 8) 291 F. 47; Atchison, T. & S. F. R. Co. v. Calhoun, 213 U. S. 1, 29 S. Ct. 321, 53 L. Ed. 671; Waters-Pierce Oil Co. v. Deselms, 212 U. S. 159, 29 S. Ct. 270, 53 L. Ed. 453; Richmond, & D. R. Co. v. Elliott, 149 U. S. 266, 13 S. Ct. 837, 37 L. Ed. 728. The proximate cause of plaintiff's injuries, so far as they arose from his exposure in this unheated house, was the voluntary and entirely unnecessary act of plaintiff, an intelligent and responsible human being, and not the act of defendant in delaying in installing the gas meter. Atchison, T. & S. F. R. Co. v. Calhoun, 213 U. S. 1, 29 S. Ct. 321, 53 L. Ed. 671; Milwaukee & St. P. R. Co. v. Kellogg, 94 U. S. 469, 24 L. Ed. 256; Hickey v. Missouri Pacific R. Corp. (C. C. A. 8) 8 F.(2d) 128; Mendelson v. Davis (C. C. A. 8) 281 F. 18; Davis v. Schroeder (C. C. A. 8) 291 F. 47.

But there is still a further reason why the judgment cannot stand. It appears that plaintiff, on February 7th, while the weather was cold, came over with his household effects to this house, and was then exposed to the cold. He came over from Fort Smith to Van Buren on the morning of the 8th in a heated street car, and then exposed himself to the cold. Later, he went to a heated room to telephone on at least two occasions, and again exposed himself to the cold. Plaintiff's own expert witnesses say that these exposures may well have caused plaintiff's pneumonia. It is also to be observed that plaintiff did not at once become ill. He in fact worked the day following the 8th and did not call a physician for several days. In this state of the evidence, we do not think it can be determined whether the exposure to which plaintiff was subjected on the 8th, while he was waiting in the unheated house, or whether the other exposures caused his illness. Defendant was, of course, not responsible for the other exposures, and it is well settled that where proven facts give equal support to each of two inconsistent inferences, judgment must go against the party upon whom rests the burden of sustaining one of these inferences as against the other. Liggett & Myers Tobacco Co. v. De Parcq (C. C. A. 8) 66 F.(2d) 678, and cases there cited; Wheelock v. Freiwald (C. C. A. 8) 66 F.(2d) 694, and cases there cited.

We conclude that the court erred in denying defendant's motion for a directed verdict, and the judgment must be reversed for that reason.

In view of the conclusion already reached, it seems quite unnecessary to consider other questions raised on this appeal.

The judgment appealed from is reversed, and the cause remanded with directions to grant defendant a new trial.