### HALE v. MONTANA–DAKOTA UTILITIES CO.

No. 14402.

United States Court of Appeals Eighth Circuit.

Nov. 13, 1951.

Jackson & Krause, Lemmon, S. D., and Stanley R. Voas, McIntosh, S. D., on the brief, for appellant.

Julius Skaug, Mobridge, S. D. (H. F. Fellows, Rapid City, S. D., and Pat Morrison, Mobridge, S. D., on the brief), for appellee.

Before GARDNER, Chief Judge, and WOODROUGH and RIDDICK, Circuit Judges.

GARDNER, Chief Judge.

This appeal is from a judgment for defendant entered on a directed verdict. The parties will be referred to as they appeared in the trial court. Aside from jurisdictional allegations plaintiff alleges, so far as here material, that "on or about May 26, 1949, at a point in Corson County, South Dakota, defendant had negligently constructed and negligently maintained and operated its electrical transmission lines so as to inflict upon plaintiff an electrical shock thereby seriously and permanently injuring him." The defendant's answer, so far as here material, admitted the jurisdictional allegations, denied negligence and pleaded contributory negligence.

At the time of receiving his injuries plaintiff was in the employ of the South Dakota Highway Commission and was acting as rodman with a surveying crew under the direction of the instrument man, cross-sectioning certain ground along a proposed relocation of a portion of U. S. Highway 12, near McIntosh, Corson County, South Dakota. Defendant owned, maintained and operated an electric highline on an easement strip ten feet in width, some thirty-eight feet south of and parallel with the section line running east and west between Sections 23 and 36. The transmission wires were suspended on poles 250 feet apart, the poles being extended twenty-six feet above the surface of the ground. At the time of the accident the wires carried a voltage of approximately 41,600 volts. Plaintiff was equipped with and was carrying a surveyor's rod faced on one side with metal and so constructed in sections that it could be collapsed without difficulty. When fully extended it was fifteen feet in length but could be collapsed to a length of five or six feet. At the time of receiving his injuries plaintiff passed onto the strip occupied by defendant's highline and in attempting to set up his surveyor's rod in a vertical position contacted the metal faced instrument with the charged line, resulting in severe shock and inflicting serious injuries, the extent of which is not here involved. Further facts will be developed in the course of this opinion.

At the close of plaintiff's case defendant interposed a motion for a directed verdict on the grounds, among others, that no actionable negligence had been proven; that the negligence alleged was not the proximate cause of plaintiff's injuries and that plaintiff was himself guilty of such negligence as to preclude his right to recover damages. The court granted this motion and from the judgment entered pursuant thereto plaintiff prosecutes this appeal.

■ The court having granted the motion for a directed verdict, we must view the evidence in a light most favorable to plaintiff, giving him the benefit of such favorable and legitimate inferences as may reasonably be drawn from the evidence. If, when so considered, reasonable men might fairly reach different conclusions, the case should have been submitted to a jury. Westland Oil Co. v. Firestone Tire & Rubber Co., 8 Cir., 143 F.2d 326.

■ As indicated by its name, defendant is a public utility, producing and transmitting electricity for light and power purposes. Electricity is regarded as a dangerous agency and the degree of care required to be used in its production and distribution is the highest degree of care that skill and vigilance can suggest consistent with the practical conduct of the business. DeGooyer v. Harkness, 70 S.D. 26, 13 N.W. 2d 815; Roster v. Inter-State Power Co., 58 S.D. 521, 237 N.W. 738. The degree of care resting upon such companies is variously expressed. Such companies are bound to use reasonable care in the construction and maintenance of their lines which means such care as a reasonable man would use under the circumstances. The degree of care which will satisfy this requirement varies with the danger which will be incurred by negligence and must be commensurate with the danger involved and that may otherwise be expressed as the utmost care and prudence consistent with the practical operation of its plant. Interstate Power Co. v. Thomas, 8 Cir., 51 F. 2d 964, 84 A.L.R. 681; Greenwald v. Northern States Power Co., 226 Minn. 216, 32 N.W.2d 320.

■■ But while defendant was required to exercise that degree of care and skill commensurate with the danger involved it was not an insurer of the safety of plaintiff. There were no contractual relations between plaintiff and defendant so that defendant was not charged with the responsibility of furnishing plaintiff with a reasonably safe place in which to work nor the duty to instruct him as to the hazards of his employment. Negligence to be actionable must be such that the injury complained of might reasonably have been foreseen or anticipated. Fetzer v. Aberdeen Clinic, 48 S.D. 308, 204 N.W. 364, 39 A.L.R. 1423; Fort Smith Gas Co. v. Cloud, 8 Cir., 75 F.2d 413, 415; 97 A.L.R. 833; Atchison, T. & S. F. R. Co. v. Calhoun, 213 U.S. 1, 29 S.Ct. 321, 53 L.Ed. 671. In Fort Smith Gas Co. v. Cloud,

supra, we said, inter alia: "The consequence of the negligent act must be within the range of probability as viewed by the ordinary man, and consequences which are merely possible cannot be regarded as either probable or natural. The alleged consequences of the act here claimed to have been negligent are not such as could reasonably have been foreseen or anticipated. One is bound to anticipate only the reasonable and natural consequences of his conduct."

One need not guard against that which a reasonably prudent person under the circumstances would not anticipate as likely to happen. Here in the final analysis the only act charged as negligence is the maintaining of this transmission line at a height of fourteen feet, seven inches above the surface of the ground where the accident happened, instead of at a height of seventeen feet. This portion of the line was strung over prairie land unoccupied except for grazing purposes. The ground was somewhat undulating. The wires were suspended on cross arms attached to poles at a distance of approximately twenty-six feet from the surface of the ground. These poles were set in the ground 250 feet apart. Naturally, there was some sagging between the poles. Where such wires cross or are upon a public street or highway in South Dakota they are by statute, S.D.Code, 1939, Sec. 28.1004, required to be eighteen feet above the surface of the ground. But there was no such requirement here. The wires passed over an easement on private property. There was some evidence that the practice among electric companies required a minimum clearance of seventeen feet but the witness so testifying, on cross-examination said: "It is the practice to consider the locality so as to build in order that there will be no possibility of human contact and if you build at a point or height where there is no reasonable probability of human contact, you have built it all right."

The ground where the accident happened was higher than the ground where the supporting poles in either direction were located. This elevation in the contour is referred to as a hill and would, of course, have the effect of decreasing the distance between the surface of the ground and the overhanging wire. The accident happened, as has been observed, in a prairie field. One walking could not contact a wire over fourteen feet in height, neither could one on horseback or in any ordinary vehicle that could be used as a means of transportation over this ground. In such circumstances should a reasonably prudent man anticipate that anyone walking or riding would carry a metal conductor and raise it up to such a height as to make contact with the wire? We think this inquiry must be answered in the negative. Greenwald v. Northern States Power Co., supra; Hetrick v. Marion-Reserve Power Co., 141 Ohio St. 347, 48 N.E.2d 103; Morton's Admr. v. Kentucky-Tennessee Light & Power Co., 282 Ky. 174, 138 S.W.2d 345; Kreigh v. Westinghouse, Church, Kerr & Co., 8 Cir., 152 F. 120, 11 L.R.A.,N.S., 684; Atchison, T. & S. F. R. Co. v. Calhoun, supra.

In Atchison, T. & S. F. R. Co. v. Calhoun, supra, the Supreme Court said [213 U.S. 1, 29 S.Ct. 323]: "But, even where the highest degree of care is demanded, still the one from whom it is due is bound to guard only against those occurrences which can reasonably be anticipated by the utmost foresight."

In Morton's Adm. v. Kentucky-Tennessee Light & Power Co. supra, it was charged that the defendant was negligent in maintaining the high voltage wire too close to a bridge. In the course of the opinion it is said [138 S.W.2d 348]:

"That in turn brings into play the rule that a defendant generally is not liable where no injurious consequences could reasonably have been contemplated as a result of the act complained of. * * *

"* * * Where no danger exists in a condition which merely made it possible for an injury to happen through some independent, unrelated and efficient cause, the condition cannot be held as the proximate cause. Collins' Adm'r. v. Chesapeake & Ohio Railway Company, 276 Ky. 659, 124 S.W.2d 1039. Under this general law, even with the high degree of care imposed upon distributors of electricity, they are not required to guard against that which a reasonably prudent person under the circum-

stances would not anticipate as likely to happen; thus they are not required to insulate wires at points where no one could reasonably be expected to come in contact with them."

In Kreigh v. Westinghouse, Church, Kerr & Company, supra, this court, speaking through the late Judge Walter H. Sanborn, said [152 F. 122]: "As the accident could not have been foreseen to be the natural or probable result of the failure to provide signals, lever, or guy rope, the defendant owed the plaintiff no duty to do so, and was guilty of no actionable negligence."

Under the undisputed evidence in this case, viewed in a light most favorable to plaintiff, we think this accident could not have been anticipated. It was scarcely conceivable that anyone in a surveying party or otherwise would reach fourteen feet above the surface of the ground with a metal rod of unnecessary and extraordinary length, directly under these wires.

██ But we think there is another conclusive reason why the court did not err in directing a verdict for the defendant. According to his own testimony plaintiff was well aware of the presence of these overhanging wires. He knew that they were conductors of electricity, carrying high voltage. He was a mature and intelligent young man and knew the dangerous nature of electricity, and one with knowledge of the nature and characteristics of electricity and the danger arising from contact with its conductors is charged with the same degree of care as is the company producing and transmitting it and failure to exercise such care by a plaintiff seeking to recover constitutes contributory negligence on his part. According to plaintiff's own testimony he was under this highline on a little hill or rise in the surface of the ground and brought a metal-lined rod up against the transmission line without making any effort to avoid such contact. Knowing the presence of these lines and the danger arising from contact with them, ordinary care required either that he shorten the rod to five or six feet or place it to one side of the lines. There was no necessity of bringing it directly under these lines and the failure to take any precaution whatever constituted

negligence as a matter of law, and we think reasonable men could not differ in this conclusion. Dresser v. Southern California Edison Co., 28 Cal.App.2d 510, 82 P.2d 965; Benard v. Vorlander, 87 Cal.App.2d 436, 197 P.2d 42; Aller v. Iowa Electric Light & Power Co., 227 Iowa 185, 288 N.W. 66; Murphy v. Iowa Electric Co., 206 Iowa 567, 220 N.W. 360; West Texas Utilities Co. v. Harris, Tex.Civ.App., 231 S.W.2d 558.

In Dresser v. Southern California Edison Co., supra, the facts were quite similar to those in the instant case. In that case plaintiff knew of the proximity of a high voltage wire but with that knowledge raised a pump rod until it contacted the wire. In affirming a directed verdict for the defendant the court said [82 P.2d 968]: "Plaintiff was in no danger at all until he raised the rod to the height of the wires. He knew the wires were somewhere above him. He did not ascertain their exact location. He did not know if the wires were insulated. He could have determined this fact by simply looking at them. He did not look at what was in plain sight. This unfortunate young man simply 'took a chance' and was terribly injured."

In Murphy v. Iowa Electric Co., supra, plaintiff attempted to swing a telephone wire up onto a spike on a highline pole. The wire came in contact with the highline with fatal result. The Supreme Court of Iowa in a well-considered opinion held that any adult, sane man should know and see the danger connected with the man's conduct. In the course of the opinion it is said [220 N.W. 364]: "How, then, could any jury say this was prudent and the exercise of such care as reasonable men would take? Plainly it was not, and minds of honest and reasonable men cannot disagree concerning the negligence of Murphy's act in view of these conditions."

In West Texas Utilities Co. v. Harris, supra, the facts are strikingly similar to those in the case at bar. In that case the power company maintained its highline a few inches less than required by statute. A workman brought a gasoline pipe in contact with the wire and was killed. He could have avoided the accident had he looked at the wire but he did not do so. In the course

of the opinion it is said [231 S.W.2d 564]: "While the undisputed evidence shows, as it does here, the existence of danger and that the injured person knew of the danger and exercised no care for his own safety, contributory negligence of the injured party is shown, as a matter of law. * * *"

The provisions of Chapter 160 of the 1941 Session laws of South Dakota are not applicable in this case because under the undisputed evidence plaintiff was guilty of more than slight negligence which if it did not proximately cause at least contributed to his injury. Friese v. Gulbrandson, 69 S.D. 179, 8 N.W.2d 438. We conclude that there was no error in directing a verdict for defendant and the judgment appealed from is therefore affirmed.