2005 SD 91

Jason DODSON, individually and as Special Administrator of the Estate of Kristi M. Dodson, Deceased, Plaintiff and Appellant,

v.

SOUTH DAKOTA DEPARTMENT OF HUMAN SERVICES and South Dakota Human Services Center; Dr. Hartley Alsgaard, individually and in his capacity as an employee of the South Dakota Department of Human Services, Defendants and Appellees,

and

Avera McKennan Hospital of Sioux Falls and Dr. Matthew Stanley, Defendants.

No. 23234.

Supreme Court of South Dakota.

Argued March 23, 2005.

Decided Aug. 10, 2005.

Edward C. Carpenter of Costello, Porter, Hill, Heisterkamp, Bushnell & Carpenter, Rapid City, South Dakota, Attorneys for plaintiff and appellant Jason Dodson.

Gary P. Thimsen and Mary A. Akkerman of Woods, Fuller, Shultz & Smith, Sioux Falls, South Dakota, Attorneys for defendants and appellees South Dakota Department of Human Services and Human Services Center and Dr. Hartley Alsgaard.

RUSCH, Circuit Judge.

[¶ 1.] In this medical malpractice action, Jason Dodson (Jason), individually and as special administrator of the estate of his wife, Kristi M. Dodson (Kristi), appeals from a decision of a Minnehaha County jury that barred any recovery because of Kristi's contributory negligence. Because the trial court erred in how it instructed the jury on the issue of contributory negligence, we reverse and remand for a new trial.

## FACTUAL AND PROCEDURAL HISTORY

[¶ 2.] Kristi graduated from Pierre High School in 1998. While in high school she was involved in numerous activities and had a wide circle of friends. She lived in Kansas from 1998 to 2000 and then returned to Pierre where she and Jason were married in August 2000. Shortly after the wedding Kristi began to suffer from various health problems as well as erratic behavior.

[¶ 3.] On March 21, 2001, Kristi's parents and husband persuaded her to enter McKennan Hospital for evaluation and treatment. While there, she was diagnosed with bipolar disorder which is also referred to as manic depression. This is a severe mental illness which is characterized by wide mood alterations or swings between depression and mania and has a high rate of suicide.[1] At the hospital she

---

1. The testimony at trial indicated a factual dispute as to whether her family was ever told

was severely depressed and on April 1 attempted to commit suicide. Although she was unconscious when found, she was successfully resuscitated. Two days later McKennan Hospital recommended that Kristi be transferred to the South Dakota Human Services Center (HSC) for long term treatment. She was taken to HSC on April 4 and remained there until April 11 when she was discharged. Her husband took her home to Pierre that day and the following day she committed suicide.

[¶ 4.] This action was brought by Kristi's estate against Dr. Matthew Stanley and his employer Avera McKennan Hospital, the South Dakota Human Services Center, and Dr. Hartley Alsgaard and his employer the South Dakota Department of Human Services. Appellees raised the affirmative defenses of contributory negligence and assumption of the risk. The case was tried to a jury in Minnehaha County in February 2004. At trial there was a factual dispute as to how and why Kristi was released from HSC.[2] The jury was given the standard instruction on the affirmative defense of contributory negligence which told them to apply an objective reasonable person standard to Kristi's conduct. They were also instructed on the defense of assumption of the risk.[3]

of this diagnosis.

2. HSC and Dr. Alsgaard claimed that Kristi was released as a result of her voluntary election to leave. However, that fact was not documented in the manner required by statute and regulations. All of the paperwork supporting that claim was prepared after HSC knew of Kristi's death.

3. The instructions given included:

Instruction No. 17

It is the duty of the patient to use such care as a reasonable person would use in similar circumstances. It is the duty of the patient to submit to the treatment prescribed by the physicians and follow the reasonable directions given.

Instruction No. 23

Negligence is the failure to use reasonable care. It is the doing of something which a reasonable person would not do, or the failure to do something which a reasonable person would do, under facts similar to those shown by the evidence. The law does not say how a reasonable person would act under facts similar to those shown by evidence. That is for you to decide.

Instruction No. 24

Contributory negligence is negligence on the part of a plaintiff which, when combined with the negligence of a defendant, contributes as a legal cause in the bringing about of the injury to the plaintiff.

Instruction No. 25

A plaintiff who is contributorily negligent may still recover damages if that contributory negligence is slight or less than slight when compared with the negligence of the defendants.

In determining this issue you must determine the answer to two questions:

1. Whether the plaintiff and the defendant are negligent; and

2. If both are negligent, whether the plaintiff's negligence is

(a) "slight" or less than "slight", or

(b) more than "slight" in comparison with the Defendant's negligence.

In answering the second question, you must make a direct comparison between the conduct of the plaintiff and the defendants. If you find the plaintiff's contributory negligence is more than slight when compared with the negligence of the defendants, then the plaintiff is not entitled to recover any damages. If you find the plaintiff's contributory negligence is slight, or less than slight, when compared with the negligence of the defendant, then the plaintiff is entitled to recover damages. However, the plaintiff's damages must be reduced in proportion with the amount of the plaintiff's contributory negligence.

Instruction No. 26

If a person assumes the risk of injury, the person is not entitled to any recovery. To support an assumption of the risk defense, the defendants must show:

1. that the person had actual or constructive knowledge of the existence of the specific risk involved;

2. that the person appreciated the risk's character; and

3. that the person voluntarily accepted the risk, having had the time, knowledge,

[¶ 5.] Following a five day trial, the jury found that Avera McKennan Hospital and Dr. Stanley were not negligent.[4] The jury found that HSC or Dr. Alsgaard breached the applicable standard of care for Kristi and that this breach was the legal cause of her injuries or damages. However, the jury also found that any recovery against these appellees was barred by Kristi's contributory negligence which was more than slight. As a result, the jury did not reach the issue of assumption of the risk.

[¶ 6.] Jason appeals raising the following issue:

> Whether the trial court erred in instructing the jury on contributory negligence and assumption of the risk.

## STANDARD OF REVIEW

[¶ 7.] Our standard of review of this issue is settled:

> Under our standard of review, we construe jury instructions as a whole to learn if they provided a full and correct statement of the law. If, as a whole, the instructions misled, conflicted, or confused, then reversible error occurred. The party charging that an instruction was given in error has the dual burden of showing that the instruction was erroneous and prejudicial. An erroneous instruction is prejudicial if in all

probability it produced some effect upon the verdict and is harmful to the substantial rights of the party assigning it. *Behrens v. Wedmore*, 2005 SD 79, ¶ 37, 698 N.W.2d 555, 570 (citing *First Premier Bank v. Kolcraft Enterprises, Inc.*, 2004 SD 92, ¶ 40, 686 N.W.2d 430, 448 (internal citations omitted)). *See also Christenson v. Bergeson*, 2004 SD 113, ¶ 14, 688 N.W.2d 421, 426. In this case, Dodson has the burden to show that the instructions given were in error, and that the error was prejudicial under SDCL 15-6-61. In order to prevail, error must be shown " 'which in all probability produced some effect upon the jury's verdict and is harmful to the rights of the party assigning it.' " *Christenson*, 2004 SD 113 at ¶ 29, 688 N.W.2d at 428–429 (citing *Kjerstad v. Ravellette Publications Inc.*, 517 N.W.2d 419, 426 (S.D.1994); *State v. Michalek*, 407 N.W.2d 815, 818 (S.D.1987)).

## DECISION

### A. Contributory Negligence.

[¶ 8.] The defense of contributory negligence is applicable in professional negligence cases including medical malpractice actions. *Mid–Western Elec. Inc. v. DeWild Grant Reckert*, 500 N.W.2d 250, 254 (S.D.1993); *Behrens, supra.*[5] The issue in this case is the proper standard to be applied by a jury in judging the contrib-

---

and experience to make an intelligent choice.

Instruction No. 26A

A patient does not assume the risk of negligence or other malpractice on the part of any mental health professional or hospital or mental institution or its staff.

Instruction No. 30

Every person has a duty to exercise the ordinary care for his own safety that a reasonable and prudent person would exercise in the same or similar circumstances.

4. No appeal has been taken from that decision. Consequently, Avera McKennan Hospi-

tal and Dr. Matthew Stanley are not parties to this appeal.

5. However, a medical practitioner may not argue that a patient's negligence in sustaining an injury is a defense to a claim of malpractice occurring in the treatment of that injury. *Jensen v. Archbishop Bergan Mercy Hospital*, 236 Neb. 1, 459 N.W.2d 178 (1990). *See also Whitehead v. Linkous*, 404 So.2d 377 (Fla. Dist.Ct.App.1981) holding that the jury should not have been instructed on contributory negligence when the patient died as a result of malpractice while hospitalized as a result of a suicide attempt.

utory negligence of a plaintiff who was suffering from a mental illness. The general rule is that:

> One whose mental faculties are diminished, not amounting to total insanity, is capable of contributory negligence, but is not held to the objective reasonable-person standard. Rather, such a person should be held only to the exercise of such care as he or she was capable of exercising, that is, the standard of care of a person of like mental capacity under similar circumstances.

57B AmJur2d *Negligence* § 864 (2005). *See also* William L. Prosser & W. Page Keeton, *Prosser & Keeton on the Law of Torts* § 32 (5th ed 1984):

> In the case of mentally defective or insane plaintiffs, where the issue involves the contributory or comparative fault of such persons, the policy arguments outlined above lose much of their force. In particular, the question shifts from which of two innocents should bear the loss to whether a negligent defendant should pay for the loss he has partially caused to a mentally incapacitated person incapable of properly looking after himself. Because of the obviously different equities in this situation, the great majority of courts in the contributory negligence context apply a lower standard of care and consider the plaintiff's incapacity as only one of the "circumstances" to be considered in judging the quality of his conduct.

[¶ 9.] Jason contends that contributory negligence instructions should not be given in suicide cases and there are authorities which support that view. *See McNamara v. Honeyman*, 406 Mass. 43, 546 N.E.2d 139, 146–147 (1989) (there can be no comparative negligence where the defendant's duty includes preventing the self-destructive acts which caused the plaintiff's injury); *Cowan v. Doering*, 215 N.J.Super.

484, 522 A.2d 444, 448 (App.Div.1987) (a contributory negligence instruction should not be given in a suicide case because the "suicidal conduct constituted one of the very symptoms for which [the patient] was being treated."); *Cole v. Multnomah County*, 39 Or.App. 211, 592 P.2d 221, 223 (1979) (a defendant's liability may not be reduced by comparing his negligent conduct with the decedent's intentional suicide since the suicide was the foreseeable risk created by the defendant's negligence); *Hoeffner v. The Citadel*, 311 S.C. 361, 429 S.E.2d 190, 193 (1993) (where the duty exists to prevent a patient from committing suicide, the very suicide which the defendant has the duty to prevent cannot constitute assumption of the risk or contributory negligence).

[¶ 10.] Appellees contend that it was proper to instruct the jury on contributory negligence relying upon a 1925 decision by this Court involving a fact situation similar to the instant case. In *Fetzer v. Aberdeen Clinic*, 48 S.D. 308, 204 N.W. 364 (1925) a patient was operated on for appendicitis. Following the operation, the patient developed what the decision describes as delirium and, while in that state, jumped or fell from a third story window. In its decision, this Court indicated that there are no questions more delicate than the proper care to be given to delirious or irrational patients. The Court went on to set out a general rule that no one is required to guard against an event which a reasonable person would not anticipate as likely to happen. However, the Court also indicated that a defendant may be liable if he has notice or knowledge of conduct or a condition of mind on the part of the plaintiff which indicates that he intended self-injury or self destruction. This Court clearly indicated in *Fetzer* that a subjective standard should be applied in such a case, not

an objective standard as was used in the instant case. The Court said:

It is evident that in this case, and in all similar cases, the injuries complained of are directly due to the acts of the person suffering the injuries. Under the general rule of law the contributory negligence of the injured person would bar any recovery on his part, or on the part of his representatives. It is only on the theory that the incapacity of the person injured removes his case from the general rule that any recovery can be had. Evidently, then, the burden is clearly upon those seeking to be relieved from this general rule to show such incapacity, and notice thereof to those sought to be charged. And it is further evident that this notice of the condition of the patient must be such as to give those sought to be charged reason to believe that his doing injury to himself may be anticipated.

*Fetzer,* 48 S.D. at 315, 204 N.W. at 367. This 1925 South Dakota decision is in accord with the majority view as set out in 57B AmJur2d *Negligence* § 864 and in *Prosser and Keeton on the Law of Torts,* § 32, that a mentally ill person should be required only to exercise such care as he or she is capable of exercising; this is the standard of care of a person of like mental capacity under similar circumstances. Under this standard the jury should be instructed to apply a subjective or capacity based test to a mentally ill plaintiff's conduct rather than the objective reasonable person standard which they were told to apply in this case.[6]

[¶ 11.] As explained in *Birkner v. Salt Lake County,* 771 P.2d 1053, 1060 (Utah 1989):

[i]n contrast to the use of an objective standard in cases of primary negligence, the majority of courts have adopted a more compassionate stance regarding the contributory negligence of the mentally impaired. Those who are insane are incapable of contributory negligence, whereas lesser degrees of mental impairment should be considered by the jury in determining whether the plaintiff was contributorily negligent.

Even *Cowan, supra,* the case relied upon by Jason, indicates that the modern trend is in favor of a capacity based standard for the contributory negligence of a mentally disturbed plaintiff. Similarly, many of the cases relied upon by appellees indicate the preference for the subjective, capacity based, standard. *See Maunz v. Perales,* 276 Kan. 313, 76 P.3d 1027 (2003) (the mental capacity of the plaintiff should be taken into consideration when determining

---

**6.** Illustrative of the subjective or capacity based instructions is the one given in *De Martini v. Alexander Sanitarium, Inc.,* 192 Cal. App.2d 442, 13 Cal.Rptr. 564, 567 (1961) where the court instructed on contributory negligence but also gave the following instruction:

"... Accordingly, if you find from the evidence in this case that at the time of the accident and immediately preceding it the Plaintiff, Thaddeus DeMartini, was in such mental condition that he was likely to harm himself or was not capable of realizing the consequences of his acts or of caring for his own safety, and that the defendant hospital, with knowledge of plaintiff's condition had undertaken to safeguard him and protect him against himself, then I instruct you that as a matter of law the Plaintiff, Thaddeus De Martini, was not guilty of contributory negligence."

Other cases suggest that a capacity based instruction could be crafted from the instruction dealing with the negligence of a minor which, in South Dakota, provides "As applied to a minor, ordinary care or skill means that degree of care or skill which would fairly be anticipated in like circumstances from a reasonably prudent minor of the same age, intelligence, maturity, experience, and capacity." (SD Pattern Instruction (Civil) 10–05).

fault and the jury should use a capacity based standard, not a reasonable person standard); *Arias v. State,* 195 Misc.2d 64, 755 N.Y.S.2d 223, 232 (N.Y.Ct.Cl.2003) (The standard of care which a mentally ill patient must exercise to protect himself is not based upon the objective standard of a reasonable person but rather is based upon the capacity of the patient and his perception of danger considering the degree of his illness); *Hunt v. King County,* 4 Wash.App. 14, 481 P.2d 593, 600 (1971) (contributory negligence can be a defense in an action where a patient jumped from a window but it is a prerequisite that the patient must be capable of exercising the care of a reasonable person); *Hofflander v. St. Catherine's Hospital, Inc.,* 262 Wis.2d 539, 664 N.W.2d 545 (2003) (if there was a special relationship and the caregiver knew or should have known of the particular risk of harm and there is some evidence that the caregiver failed to exercise the duty of care that was required under the circumstances, then the fact finder should compare the respective negligence under a subjective standard). In *Champagne v. U.S.,* 513 N.W.2d 75, 80–81 (N.D.1994) the North Dakota Supreme Court held:

> If the patient's capacity for self care is so diminished by mental illness that it is lacking, we agree that an allocation of fault is not appropriate.

> . . .

> In making the fault comparison, the factfinder should always take into account the extent of the patient's diminished mental capacity to care for his own safety.

[¶ 12.] The trial court in *Fetzer* utilized such a subjective, capacity-based, standard, and instructed the jury that:

> "The court instructs the jury that the degree of care and diligence required is measured both by the mental incapacity of the patient and the dangers which the surroundings indicate may befall such patient in view of any peculiar mental traits exhibited by the patient."

*Fetzer,* 48 S.D. at 313, 204 N.W. at 366. This is in marked contrast to the instruction given in the instant case where the jury was told:

> Negligence is the failure to use reasonable care. It is the doing of something which a reasonable person would not do, or the failure to do something which a reasonable person would do, under facts similar to those shown by the evidence. The law does not say how a reasonable person would act under facts similar to those shown by evidence. That is for you to decide.

[¶ 13.] In the instant case the jury was instructed that Kristi's conduct had to be measured by the standard of a reasonable person in those circumstances. They were not instructed that Kristi's conduct was to be judged in light of her mental capacity. This defect was exacerbated by Instruction 17 which informed the jury that Kristi had to use the same care as any other reasonable person and made no reference to her mental capacity.

[¶ 14.] The evidence in this case was sufficient to show mental incapacity on the part of Kristi and that HSC and Dr. Alsgaard had notice of that incapacity. Her suicide attempt on April 1 gave them notice of this condition and reason to anticipate that Kristi could harm herself. The jury should have been instructed to evaluate the effect of that mental incapacity in judging Kristi's contributory negligence. While it would have been preferable for Jason's counsel to propose such a subjective instruction, counsel did move for a directed verdict on the issues of contributory negligence and assumption of the risk

on the grounds that there was no evidence to enable the jury to evaluate the effect of Kristi's mental illness on the issues of contributory negligence and assumption of the risk. This objection was sufficient to give the trial court an opportunity to correct the grievance complained about on appeal. *Rogen v. Monson*, 2000 SD 51, n. 2, 609 N.W.2d 456, 460.[7]

[¶ 15.] Since the only reason the jury did not return a verdict in favor of Jason was the finding of contributory negligence, it is clear that the instructions given were prejudicial, i.e. the jury probably would have returned a different verdict if the faulty instructions had not been given. *Davis v. Knippling*, 1998 SD 31, ¶ 4, 576 N.W.2d 525, 526–27.

### B. Assumption of the Risk

[¶ 16.] In this case the jury made no finding on the issue of assumption of the risk because it found that Kristi was contributorily negligent. However, Instructions 26 and 26A were confusing. Instruction 26 (SD Civil Pattern Jury Instruction 13–01) told the jury the circumstances under which assumption of the risk applied and 26A said that it did not apply to mental patients.

[¶ 17.] In *Morrison v. MacNamara*, 407 A.2d 555 (D.C.1979) the court said that assumption of the risk is a defense only when the plaintiff possesses full comprehension and appreciation of the danger which will require an analysis of the patient's age, intelligence and experience. Assumption of the risk is rarely applied in professional negligence cases because of the disparity of knowledge between professionals and their clients. *Id.*

The superior knowledge of the doctor together with the limited ability of the patient to ascertain the risks and dangers negate a critical element, i.e. the knowledge and appreciation of the risk. *Id.* In a later case, *Durphy v. Kaiser Foundation Health Plan*, 698 A.2d 459 (D.C.1997), the same court held that a physician's superior knowledge and expertise and the limited knowledge of the patient concerning the dangers negate the knowledge and appreciation of the risk which are critical elements of that defense.

[¶ 18.] The trial court here should have instructed on assumption of the risk as a defense only if it determined that Kristi possessed full comprehension and appreciation of the danger of injury. This required the court to perform an analysis of her age, intelligence, experience and mental condition.

[¶ 19.] Reversed and remanded.

[¶ 20.] GILBERTSON, Chief Justice, and KONENKAMP, ZINTER and MEIERHENRY, Justices, concur.

[¶ 21.] RUSCH, Circuit Judge, for SABERS, Justice, disqualified.

---

7. Jason filed a motion in limine to prevent mention of the defenses of contributory negligence and assumption of the risk. That motion was apparently heard by the court on January 5, 2004, but no transcript of that hearing was included in the record on appeal.

As a result, we cannot determine what arguments were made at that hearing. Although this comes perilously close to a procedural default on the part of Jason, we conclude that the argument on the motion for directed verdict preserved this issue for appeal.